Pabst Brewing Company, Respondent, vs. City of Mil-
waukee, Appellant.

Joseph Schlitz Brewing Company, Respondent, vs. City
of Milwaukee, Appellant.

*December 7, 1911—March 12, 1912.*

(1) *Pleading: Liberal construction.* (2–10) *Municipal corporations:*
*Milwaukee city charter: Viaducts: Changing grade of streets:*
*Injury to abutting property: Liability: Assessment of benefits*
*and damages: Questions for jury: Appeal: Record: Presump-*
*tions: Harmless errors.*

1. Upon a demurrer *ore tenus* a complaint will be liberally con-
strued and all reasonable presumptions allowed in its favor.

2. The provision in the Milwaukee city charter that no lotowner
who shall have signed a petition for a change of the street
grade or for the grading of the street in conformity with such
altered grade shall be entitled to compensation, etc., does not
constitute an *exception* to the statutory right to recover for
damage caused by such a change, but rather a condition which
goes to defeat it, and hence is matter of defense.

3. An "exception" exempts something absolutely from the operation
of a statute by express words in the enacting clause, while a
"proviso" defeats its operation conditionally.

4. Under ch. 376, Laws of 1901, providing for the construction of
viaducts, the damages to abutting lotowners on a street upon
which such a viaduct is built are to be ascertained in the same
manner as in cases of alteration of street grades, and a con-
trary intent is not evinced by the provision in sec. 2 of that
act, that "as soon as practicable" after plans, specifications, and
an estimate of cost have been made, "the city may enter upon
the construction" of the viaduct. An estimate of benefits and
damages must therefore be had before the city proceeds with
the construction.

5. Where the city omits to take the necessary steps for the assess-
ment of benefits and damages before proceeding with the work,
an abutting lotowner whose property is damaged by the con-
struction of the viaduct may maintain an action against the
city to recover such damages.

6. The construction of a viaduct in a street graded to an estab-
lished grade is an alteration of such grade which, under the
charter of Milwaukee, entitles abutting owners to recover the
actual damages sustained by reason thereof.

7. It being admitted that prior to the paving of a street (on which a viaduct was afterward constructed) the city had by ordinance established the gráde thereof, proof that the common council ordered said street to be paved with granite blocks, but on petition of the property owners permitted them to pave it with cedar blocks; that street levels of the established grades were furnished by the city engineer; that the work was done conformably to such levels, and when completed was approved by the department of public works; and that the common council allowed and ordered paid to such owners the cost of paving the street intersections,—is *held* to justify the ruling of the trial court that as a matter of law the street when paved was graded to the established grade.

8. In such case, the original bed of the street having been of a low and swampy nature, the fact that after fourteen years use a new survey showed the actual grade to vary from the established grade at the time of paving, did not raise such a conflict as to require submission of the evidence to the jury.

9. In the absence from the record of the instructions upon the subject of damages, this court must assume on appeal that the jury was properly limited to the actual depreciation in the market value of plaintiff's property, and cannot say that evidence admitted over objection as to the original cost of the buildings and land, as to the effect of the viaduct and its use upon the light and dampness of plaintiff's property, and as to the effect of the noise and vibration upon the property itself and its occupancy, was prejudicial to the defendant.

10. The city in constructing a viaduct having acted in disregard of the statute and being therefore a trespasser upon plaintiff's property rights, is liable for injury to the foundation and walls of plaintiff's building caused by vibrations from the driving of piles for the foundations of the viaduct piers, that being a proximate result of the construction of the viaduct and attributable to the city's wrongful act.

APPEALS from judgments of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

These cases are both against the city of *Milwaukee* for damages for injuries alleged to have been caused to the plaintiffs' properties by the erection of the Sixth street and First avenue viaduct, which crosses the Menomonee valley and connects the west and south sides of the city of *Milwaukee.* The roadway of the viaduct is about twenty-four feet above the surface of

First avenue, on which the properties of the plaintiffs abut, and from which there was access at grade to the buildings erected upon these premises. The viaduct has been erected under the authority conferred by ch. 376, Laws of 1901.

In the spring of 1888 the city established a grade upon this street for paving it with granite blocks. Resolutions were passed by the common council and other proceedings had for grading, curbing, laying drains and gas and water pipes, and providing for paving the street with granite blocks. In the fall of the year a resolution was adopted by the common council rescinding the resolution of August 13, 1888, which provided for paving the street with granite blocks, and instructed the board of public works to grade and otherwise improve the street. Subsequently the street was paved with cedar blocks by the property owners, the city paying the cost of the paving of the street intersections and of the gutters. This was done upon the recommendation of the officers in charge of the work and upon bills presented therefor and approved by the common council.

The city engineer, who at the time the street was paved in 1888 was assistant engineer for the city and in charge of work in this section of the city, testified that the paving was done at the grade established by the common council. There was also some evidence that the work in 1888 was done under the supervision of a superintendent for the city. There was evidence from surveys made in 1902 to the effect that at that time the paving was not on the grade established before the improvement of 1888 was made. There was also evidence that the ground in the valley was low and soft and that there had been some settling.

Evidence was received of the original cost of the buildings and of the real estate; of the effect on the buildings, as to light and dampness, of the erection of the viaduct; of the effect on the neighboring ground of the pile-driving for the viaduct; of the effect of the noise, dust, and dirt and the

jarring caused by passing wagons and cars on the buildings; of the nonaccessability of the buildings from the viaduct; and of losses of rent.

There was no assessment of benefits and damages due to the erection of the viaduct.

The court overruled demurrers *ore tenus* in both cases, refused to grant nonsuits, held as matter of law that the evidence established plaintiffs' right to damages, and submitted to the juries only the question of damages.

In the case of *Joseph Schlitz Brewing Company v. City of Milwaukee* the jury separately found an item of $455.75 as the damages caused to the structures on the premises during the construction of the viaduct. These damages were additional to the depreciation in the market value of the premises otherwise caused by the change of grade.

These are appeals from the judgments awarding damages on the verdicts.

For the appellant, *City of Milwaukee,* there were briefs by *Daniel W. Hoan,* city attorney, and *Clifton Williams,* special assistant city attorney, and oral argument by *Mr. Williams.*

For the respondent *Pabst Brewing Company* there was a brief by *Quarles, Spence & Quarles,* and oral argument by *W. C. Quarles.*

For the respondent *Joseph Schlitz Brewing Company* there was a brief by *Doerfler, Green & Bender,* and oral argument by *W. H. Bender.*

The following opinion was filed January 9, 1912:

SIEBECKER, J. The complaints were challenged by the defendant when evidence was offered by demurrers *ore tenus,* upon the ground that the facts alleged constituted no cause of action for the recovery of damages by the plaintiffs by reason of the erection of the viaduct in front of the plaintiffs' premises abutting on First avenue. When such objection is made to a complaint it will be liberally construed and all rea-

sonable presumption to accomplish justice will be allowed in its favor. Before the trials and before evidence was received, amendments were properly allowed pertaining to the establishment of street grades after February 20, 1852, and to the default of the city in omitting to make any assessment of benefits and damages as to the plaintiffs' properties by the alleged change of grade. After such amendments the complaints were sufficient to show that an assessment of benefits and damages, as provided by the city charter, had not been made by the city either before or after the construction of this viaduct.

If the charter provisions respecting alteration of grades of streets are applicable to these cases, it further appears that the complaints omitted to allege that the plaintiffs did not sign the petition asking for the alteration of the grade of the street. In sec. 8 of ch. VII of the city charter it is provided "that no owner of any lot, . . . who shall . . . have signed a petition asking for such alteration of grade, or a petition asking for the grading of a street in conformity with such altered grade, shall be entitled to compensation, but every such owner shall be deemed to have waived and relinquished all claim to compensation for any injury in consequence thereof; and no damages, costs or charges arising to such owner from such alteration of grade, shall be assessed or paid to such owner." It is contended that this provision of the charter is an exception to the statutory right granting the abutting lotowner the right to recover the damages caused by an alteration of established street grades and hence must be negatived in the complaint, because it is an allegation which is essential to support the cause of action. However, this provision of the charter, in its nature, is not an exception to the right granted, but is a condition which goes to defeat it and hence is matter of defense. It defeats the operation of the parts of the charter which grant the right to damages and goes in avoidance of the right instead of excepting it therefrom. The distinction be-

tween an exception and a proviso in a statute is clearly stated in *Rowell v. Janvrin,* 151 N. Y. 60, 45 N. E. 398, as follows:

"An exception exempts something absolutely from the operation of a statute by express words in the enacting clause; a proviso defeats its operation conditionally. An exception takes out of the statute something that otherwise would be part of the subject matter of it; a proviso avoids them by way of defeasance or excuse."

We consider that the provision relied on does not embody an exception to the right granted, and hence to state their cause of action the plaintiffs were not required to negative it. *Splinter v. State,* 140 Wis. 567, 123 N. W. 97; *Rowell v. Janvrin, supra;* 31 Cyc. 115.

It is also claimed that the alleged causes of action do not constitute a ground for a claim for damages because ch. 376, Laws of 1901, makes full provision for the construction of viaducts over railroad tracks and for crossing public streets in cities of the first class, regulates the proceedings, and provides for ascertaining the damages caused thereby and the manner in which funds to defray all costs, damages, and expenses shall be raised; and hence that the charter provisions prescribing what steps shall be taken in making an alteration of the grade of streets and assessing the benefits and damages, in the manner therein prescribed, have no application here and need not be followed. Sec. 2 of ch. 376, Laws of 1901, enacts:

"Whenever the common council of such city shall have determined to erect and construct such a viaduct it shall cause to be made a complete profile plan and detailed specifications for the work, with an estimate of the cost thereof, and as soon thereafter as practicable the city may enter upon the construction of said viaduct, . . . and all provisions of law relative to public work or improvements in said city, which are not inconsistent with the provisions of this act shall apply to the work hereby authorized, and all official acts incidental thereto. If by the construction of such viaduct . . . any damages shall be sustained by the owners of abutting prop-

erty, to the property owned by them, such damage shall be ascertained and determined in the manner provided by law for the determination and assessment of damages for the alteration of the grade of a street in said city and shall be paid as hereinafter provided."

We find nothing in the context of this provision expressly to the effect that the damages caused to abutting lotowners by the construction of a viaduct shall not be ascertained as prescribed in cases of alteration of street grades. It is argued that the language of this section, "and as soon . . . as practicable," after plans, specifications, and an estimate of the cost have been made, "the city may enter upon the construction of said viaduct," evinces an intent that the construction of the viaduct is to proceed without an assessment of benefits and damages, as is provided in other cases of alteration of street grades, and hence that the charter provisions respecting the assessment of benefits and damages do not apply. The phraseology employed cannot be said reasonably to imply such an intent. Sec. 5 of ch. 376 provides that funds for the construction of a viaduct, including payment of damages to abutting owners, shall be provided by a bond issue. There is nothing therein to indicate that the city is not required to follow the usual course for ascertaining the amount of the costs and the damages of a city improvement before undertaking the construction, and to provide the necessary funds therefor. The context of the law contains no express provisions on the subject, nor does it necessarily imply that the charter provisions for assessment of benefits and damages are inapplicable to this viaduct statute. Hence, they must be held to apply in the instant cases as to an alteration of an established street grade. There is no dispute but that the city omitted to take the steps prescribed for the assessment of the benefits and damages resulting to the plaintiffs from the construction of this viaduct; hence they are entitled to maintain these actions to compensate them for the damages caused to their properties by this change of grade.

The plaintiffs planted their complaints upon the ground that the construction of this viaduct constituted a change of the grade of a street. The case of *Colclough v. Milwaukee,* 98 Wis. 182, 65 N. W. 1039, held that the erection of a viaduct in a street graded to an established grade was an alteration of such grade and entitled the abutting owners to the actual damages they sustained therefrom. It is claimed that the evidence fails to show in each of these cases that First avenue had been graded to conform to an established grade prior to the construction of this viaduct. It is admitted that prior to the grading and paving of First avenue with cedar blocks by the lotowners under the supervision of the city authorities in 1888, the city had by ordinance established the grade of this street. It was held as matter of law, under the evidence adduced, that before the construction of this viaduct this street had been graded to an established grade. The defendant asserts that this ruling of the trial court is not sustained by the record. It appears as undisputed under the evidence that the common council in 1888 directed that First avenue be paved with granite blocks and that upon the request of the abutting property owners it rescinded such action to permit such owners to pave it with cedar blocks; that the abutting owners undertook and made this improvement under the authority of the board of public works and under the direction of the civil engineering department of the city; that street levels for grading and paving the street were furnished the owners by the engineer in charge thereof; that the owners graded and paved the street as directed and conformably to the levels so furnished, and that when completed the work was approved by the department of public works upon the report of the assistant city engineer. Upon a report to the common council of the satisfactory completion of the improvement by the abutting owners the common council allowed and ordered payment to such owners of the bills for paving the crossings and the construction of the gutters, and such

bills were thereafter duly paid. The assistant engineer's evidence, to the effect that the levels furnished for making such improvements were of the established grades, is without dispute. These positive facts and the facts and circumstances showing the course of dealing between the city and the lotowners in the making of this improvement furnish ample ground to sustain the conclusion that when the street was paved in 1888 it was graded to conform to an established grade. In the light of the use of the street during the intervening years and the fact that the original bed thereof was of a low and swampy nature, liable to allow the surface to become uneven and depressed below the level of the original grade, the fact that the actual grade of the street in 1902 varied from the established grade at the time of construction does not raise such a conflict as to require submission of the evidence to the juries.

Evidence of the value of the premises before and after the construction of the viaduct was received, and in connection therewith evidence was admitted over objection of the original cost of the buildings and real estate, of the effect of the viaduct structure and its use by the public upon the light and dampness of the plaintiffs' properties, and of the noise and vibration arising from the viaduct as affecting plaintiffs' properties and their occupancy. An exception is urged to the latter class of evidence on the ground that it was immaterial to the question of depreciation of the properties and allowed the juries to include elements of injury to property not contemplated in the law. The instructions on the subject of damages are not before us. We must assume that the juries were properly limited in fixing the amounts of the damages to the properties to the depreciation in the fair market value thereof after the change of grade resulting from the construction of this viaduct, and hence cannot say that the admission of the evidence excepted to operated to the prejudice of the defendant.

It is claimed that the item of $455.75, separately found

in the *Schlitz Case* as special damages resulting to the structures on the premises in the course of the construction of the viaduct, cannot stand. It appears in evidence that the foundations and walls of the structures on these premises were injured during the construction of the viaduct by the vibrations caused by the driving of piles for the foundation of the viaduct piers. This process of construction appears to have been appropriate for the proper construction of the viaduct, and the injury to the plaintiff's premises which resulted therefrom is such as plaintiff suffered by reason of defendant's erection of the structure. We need not determine whether such damages are contemplated as included within the damages to be awarded to abutting property owners under the provisions of ch. 376, Laws of 1901, since the plaintiff had the right to hold defendant as a trespasser upon its rights in proceeding to erect the viaduct in disregard of the provisions of the statute which conferred the right on the city. Under these circumstances the city is liable in tort for the damages caused by the wrongful invasion of the plaintiff's property rights. *Filer & S. Co. v. Milwaukee,* 146 Wis. 221, 131 N. W. 345 ; *Waukesha v. Randles,* 120 Wis. 470, 98 N. W. 237. Under the evidence it is shown that this item of damages was the proximate result of the construction of the viaduct and hence attributable to the defendant's wrongful conduct. Plaintiff was properly awarded recovery therefor.

We find no reversible error in the records of these cases.

*By the Court.*—The judgments are affirmed.

A motion for a rehearing was denied March 12, 1912.