200 So.2d 487

William Edward DICKERSON

v.

STATE.

1 Div. 166.

Court of Appeals of Alabama.

April 25, 1967.

Rehearing Denied May 16, 1967.

Thos. G. Greaves, Jr., C. Wayne Louder-milch and Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and Walter Turner, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The appellant, William Edward Dickerson, was convicted of the offense of robbery and sentenced to twelve years imprisonment in the state penitentiary.

For the state, Mr. Alvin Harris testified that on September 9, 1965, he was manager of the Pic-Kwik store at Cottage Hill and Azalea Road in Mobile County. At about 10:41, just before closing time, he and another employee were standing in the check out, "and it was the night of the bad storm, and we was looking out the window towards the road, and we saw this man walking in front of the window, and he walked on in the door, and when he walked in the door he had a hat on and he pulled it down and reached inside his coat and pulled out a gun, and walked up to the counter and said "O.K. Gentlemen, sack her up * * * he told us to open both registers,—we had two cash registers, and so he told us to give him all the bills, and so we put all the bills into one bag, and he asked us did we have any more money

anywhere,—and I told him I had just a little bit of change in a bag up under the counter, and he said he didn't want that, and then he told me to go back in the back and get him a pack of a six-pack of Schlitz beer, and so I went back there and got that and he took that and backed out the door, and stepped back in and told us not to come back out, because he would hate to shoot us." The witness identified the defendant as the man who robbed him, stated that the amount of money he put in the sack was $237.00, and that he next saw defendant at a line-up in the Mobile Police Department.

This witness testified on redirect examination that he saw the pistol at the time of the robbery and described it as an "old 32 automatic. It was maybe chrome plated one time, but it was rusted." He stated that State's Exhibit 1 appeared to be the type of pistol used in the robbery.

The state's next witness was Larry Kennedy who testified he was employed by the Mississippi Highway Patrol as a safety patrolman and was acting in that capacity in September, 1965; that he and two other patrolmen were on the highway the night of the big storm along the Mississippi and Alabama Gulf Coasts; that they came upon an automobile standing on the Biloxi-Ocean Springs bridge. Two men were in the auto drinking beer. Prior to seeing the automobile, he had received information from a reliable source that a felony had been committed in his jurisdiction in Mississippi. The witness stated he walked up to the automobile and, "asked the gentleman on the opposite side from the driver to get out of the car and he wouldn't. He had a gun between his legs, sitting on it, and I opened the door and pulled the gentleman out of the car. He resisted and the gun fell out on the highway, and the gentleman pulled away from me; and when he did, I hit him and knocked him down;" that he hit the man with his fists, and, "I then searched the man, and we brought him to the police station." He was asked if the man was in the courtroom and pointed to defendant.

The gun was an old foreign make, a .32 automatic. Later that night he turned the pistol over to Detective Wiley Foster in Mobile. The witness testified the gun marked State's Exhibit 1 appeared to be the same gun. $239.00 in money was taken out of the automobile. The money was turned over to Detective Foster of the Mobile Police Department.

The defendant did not testify and no evidence was presented in his behalf.

■ There was a pre-trial motion to suppress the evidence seized at the time of defendant's arrest, on the ground that it was obtained by an illegal search of the automobile in which defendant was a passenger. No evidence was presented at the hearing on the motion, therefore the motion to suppress was properly overruled. Carpenter v. State, 42 Ala.App. 618, 174 So.2d 336.

There was only a general objection to the questions propounded to the witness Kennedy concerning the taking of the gun and the money from the automobile. No ground of objection took the point that this evidence was obtained by an unreasonable search. Carpenter v. State, supra. At the close of this witness's testimony on direct examination defense counsel moved to strike his testimony on the ground that there had been no showing of "probable cause for the search of the automobile," and requested an "out of court" hearing on this question. The motion was denied. The appellant's objection to the question to Officer Kennedy as to whether his information that a felony had been committed came from a reliable source was overruled.

Appellant argues in brief that the state has failed to show that the search of the automobile was incident to a lawful arrest; that there was probable cause for belief that it contained articles which by law are subject to seizure; that the procuring of a search warrant was impractical because of imminence of escape or loss of evidence,

citing Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; McCurdy v. State, 42 Ala. App. 646, 176 So.2d 53.

■ We are of opinion the evidence here does not clearly show a "search" of the automobile. The inference to be drawn from the testimony of Officer Kennedy, which is the only testimony in the record pertaining to the taking of the articles from the car, is that the gun was visible to the officer when he looked into the automobile. There is no evidence tending to show from what part of the automobile the money was taken or whether it was also visible to the officer when he looked in the car. "It is not a search to see what is patent and obvious." Carver v. Ross (N.C.), 257 F. Supp. 894. See also Thompson v. State, 41 Ala.App. 353, 132 So.2d 386; Sheridan v. State, Ala., 187 So.2d 294.

In United States v. Callahan (Minn. 1966), 256 F.Supp. 739, the court said: "By approaching the vehicle and observing the interior of the car with the aid of flashlights there was no search proscribed by the Fourth Amendment. To constitute a search under the Fourth Amendment more than an ordinary use of the senses is required, * * * with the result, in most cases, of a trespass either to the person or to property. It cannot be said that there has been a search when the items are in plain view of the officers. Matthews, Reasonable Searches, 39 N.D.L.Rev. 155 (1963 * * It does not constitute a search to observe that which is exposed to visual observation, and this rule includes observations whether made in daylight or in artificial light. * * * "

■ Since we have reached the conclusion that the evidence does not show a search, there is no need to consider appellent's argument that no probable cause for the search was shown and that the arrest was not shown to be lawful, but we are of opinion the discovery of the automobile

parked on the bridge in the nighttime with the occupants drinking intoxicating beverages it was the duty of the officers to investigate, and upon observing the gun to seize it and to search the car. In Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, this statement appears:

"The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on accused's person or under his immediate control."

■ Appellant's counsel argues in brief that since the arrest and search took place in Mississippi it becomes necessary to examine the decisions of the courts of that State to determine whether the officer had probable cause to make an arrest and search, citing Mendoza v. United States, 5 Cir., 365 F.2d 268 (1966) for the proposition that the court would look to the law of the place of the arrest to determine the validity of such arrest. In Morgan v. Town of Heidelberg, 246 Miss. 481, 150 So.2d 512, the Supreme Court held that the officer had the right to arrest the defendant for a misdemeanor committed in his presence when he saw a partly concealed gun under defendant's leg on the seat of the automobile. See also Powell v. State, (Miss. 1966) 184 So.2d 866.

Defendant introduced evidence tending to show that the pistol identified as State's Exhibit 1 was actually the gun alleged to have been taken from the defendant several months before the alleged robbery for which he was on trial in this case; that it had been in the custody of police officials until trial of the former case, introduced in evidence in that case and kept as a part of the court's records until the trial in this case. Therefore, it could not have been used by the defendant in the robbery alleged to have been committed on

September 9, 1965. At the close of the State's evidence defense counsel moved to exclude State's Exhibit 1, which motion was denied.

■ This question has been dealt with by this court in the former case, Dickerson v. State, 43 Ala.App. 239, 187 So.2d 294. v. State, 43 Ala.App. 416, 191 So.2d 255. Mr. Harris identified defendant as the man who robbed him at gun point. It is immaterial whether this was the exact gun used in the robbery.

■ Appellant contends further that the verdict was the result of continuous improper questions, comments and argument to the jury all of which were highly prejudicial to his right to a fair trial, and that the cumulative effect of these incidents require a reversal of the judgment under the authority of Blue v. State, 246 Ala. 73, 19 So.2d 11. These incidents are as follows:

While questioning the witness Alvin Harris, the State's attorney asked him if he had been able to point out defendant in the group of individuals in the line-up. The witness answered, "Yes, sir, I was." The following then transpired:

"Q. Have you seen him since September of 1965?

"A. Yes, sir, at different trials.

"Q. Alright, now—

"MR. LOUDERMILCH: I object, and ask that that remark be excluded from the record.

"THE COURT: Alright, grant your motion,—disregard that remark, Gentlemen.

"Q. You have seen him since that time?

"A. Yes, sir.

"Q. And this is the man that robbed you?

"A. Yes, sir, it is."

During the cross examination of Mr. Harris, defense counsel asked how many robberies had occurred at stores where he was working. He answered three, the first robbery taking place on Highway 90, three years before. He was asked what store was it? The following occurred:

"MR. BRUTKIEWICZ: We object, incompetent, immaterial and irrelevant if he has been involved in 15 or 20 robberies.

"THE COURT: Overruled.

"MR. BRUTKIEWICZ: We take judicial knowledge of the fact that stores are being robbed around here too frequently.

"MR. LOUDERMILCH: With that sort of remark, I move for a mistrial, Judge.

"THE COURT: I'll deny your motion, but disregard the District Attorney's remark, please Gentlemen of the jury.

"MR. LOUDERMILCH: That was a statement calculated to put prejudice in the minds of the jury, and I resent it most strongly."

Another incident complained of took place during the direct examination of Officer Kennedy.

"Q. Now prior to coming up on that automobile which Mr. Cooper was in, did you have information that a felony had been committed in your jurisdiction down in Mississippi?"

"MR. LOUDERMILCH: I object.

"THE COURT: Overruled.

"A. Yes, sir, I had.

"Q. And that information came to you from a reliable source?

"A. Yes, sir. (Answer and objection being made at the same time.)

"MR. LOUDERMILCH: I object, it's calling for hearsay and opinion of the witness and he's commenting on the credibility of a person not before the court.

"THE COURT: Overruled.

"Q. And did your information lead you to believe that the person that was in that automobile, or persons that was in that automobile was armed?

"MR. LOUDERMILCH: I object, irrelevant, imcompetent, immaterial, calling for opinion.

"THE COURT: Overruled.

"MR. LOUDERMILCH: And it's also asking for evidence as to other crimes or commission of other crimes which is not before this court.

"THE COURT: Sustained.

\* \* \* \* \* \*

"Q. Were you ready at all times for anything that might come up?

"MR. LOUDERMILCH: I object, Your Honor, same grounds, and that's trying to prejudice the jury.

"THE COURT: Sustained."

During the State's Attorney's cross-examination of Mrs. Myrtle Trott, the custodian of the court records, with reference to the pistol introduced in evidence, she was asked the following questions:

"Q. Do you know William E. Dickerson when you see him?

"A. From coming into court, yes, sir.

"Q. Would you point him out to the jury here?

"MR. LOUDERMILCH: Object, Your Honor that's irrelevant.

"THE COURT: I sustain.

"Q. State of Alabama versus William E. Dickerson, and the only thing you can tell us is that this pistol—you don't know different pistols when you see them, do you?

"A. No, sir.

"Q. You seldom look at them?

"A. I handle them but I don't pay any attention to them.

"Q. You don't want nobody pointing one at you, they might hit you—but you do know what these envelopes are, don't you?

"A. Yes, sir."

(The argument here is that these questions were asked Mrs. Trott for the purpose of intimating to the jury that appellant was a well rounded criminal; that the statement that she wouldn't want anyone pointing a pistol at her because they might hit her, left a calculated inference that appellant was likely to assault other persons, and this inference reinforced the improper questioning of Officer Kennedy that he was "ready for anything that might come up.")

Other incidents complained of are the arguments of the state's attorney to the jury:

"MR. BRUTKIEWICZ: And they had gotten down to Ocean Springs, Mississippi, and that this young officer, a nice looking man, said that he got information down there,—you remember that,—he got information down there about a crime having been committed in his jurisdiction, and that this young officer, on that night when it was storming,—that was the night of the big storm—

"MR. LOUDERMILCH: Excuse me, I hate to interrupt counsel, but there is no evidence introduced by the officer that he had received a call that there had been an offense committed —I object—

"THE COURT: I think I did sustain the objection—

"MR. BRUTKIEWICZ: No, sir, you didn't, not about the—

"THE COURT: No, you are correct,— I did let him testify there had been

an offense, but I let him go no further.

"MR. BRUTKIEWICZ: You can't go into that, gentlemen,—you are not to speculate on anything that might have been,—you can't guess.

"MR. LOUDERMILCH: Your Honor, I object to counsel giving emphasis to it, and I request Your Honor to instruct the jury to disregard any remarks of the State's Attorney giving emphasis to it.

"THE COURT: Overruled and denied."

\*    \*    \*    \*    \*    \*

"MR. BRUTKIEWICZ: But gentlemen this man needs a whole lot of time, not only for himself, because I doubt seriously anything can remedy his basic traits of character such as he has, but I think it is incumbent upon you gentlemen to confine this man to the penitentiary for as many years as—

"MR. LOUDERMILCH: I object to counsel's reference to traits and character, there has been no character introduced in this court, and I ask the jury to disregard those remarks made by counsel, and further ask that such statements be stricken from the record.

"THE COURT: Alright, I'll sustain and grant your motion. Disregard those remarks gentlemen.

"MR. BRUTKIEWICZ: I won't say character then, I'll say he exhibited certain traits of individual conduct—

"MR. LOUDERMILCH: I object to that, too, Your Honor, and I object to the reference and inferences made by the State's Attorney.

"THE COURT: Overruled."

We have carefully considered the incidents set out hereinabove and we fail to find any similarity between the facts of the Blue case, supra, and those appearing here.

We find no reversible error in the record. The judgment is hereby affirmed.

Affirmed.