224 So.2d 601

**Godfrey I. VINCENT**

**v.**

**STATE of Alabama.**

**1 Div. 485.**

Supreme Court of Alabama.

June 12, 1969.

J. Connor Owens, Jr., Bay Minette, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

MERRILL, Justice.

Appellant Vincent was indicted for and tried on a charge of robbery and was sentenced to twenty-five years in the penitentiary on March 27, 1967.

Counsel was appointed to represent appellant after his indictment and before arraignment, and counsel filed a plea in abatement and a demurrer to the indictment, both of which were overruled. The record shows a notice of appeal given by counsel who represented the defendant on the robbery charge and there is also a notation by the clerk that counsel "notified this office that he withdrew his Appeal."

Appellant filed a petition for writ of error coram nobis and the hearing on it was held on August 30, 1967. Different counsel was appointed to represent the defendant on his petition.

The trial court should have dismissed the petition for writ of error coram .

nobis because it was filed within the time that an appeal could have been taken. Ex parte Roberson, 43 Ala.App. 354, 190 So. 2d 566. The reason for this rule is stated in Brown v. State, 250 Ala. 444, 35 So.2d 518, where this court said: "We think that to permit such a proceeding (writ of error coram nobis) to progress in the circuit court pending an appeal to the Court of Appeals or to this Court is contrary to the orderly procedure in such matters, as we noted in Kinney v. White, 215 Ala. 247, 110 So. 394, and others cited above."

But here, the parties and the trial court considered that there was no appeal and a full hearing was had just as if the time for taking an appeal had expired. The trial court ordered transcripts of the original trial and the hearing on the coram nobis proceeding to be prepared and they are before us in one record.

We digress to say that the instant case is not to be cited as a precedent that we have approved the filing and hearing of petitions for writs of error coram nobis prior to the expiration of the time to appeal in the case where judgment of conviction and sentence was had. But here, since all the records and the evidence are before us, we treat the instant case as sui generis, and dispose of the matter. That means that we deny the State's motion to dismiss the appeal.

The evidence on the original trial shows that Green Cooper, 66 years old, was working at a store on the night of January 18, 1967. He testified that appellant and two other men wanted to purchase gasoline; that when he attempted to get the gasoline, the appellant grabbed him from behind and held a knife to his throat and told the others to go into the store and get the money from the cash register; that appellant took his billfold, containing the sum of $808.00, which he identified; that they also took a plastic drawer from the cash register and three cartons of Salem cigarettes; that he was actually cut by the knife held to his throat; that appellant left along with the others but that he saw them later

on that night at the Gulf Shores Police Department, where he identified appellant.

Charles Reed, a patrolman at Gulf Shores, Alabama, testified that he stopped a car containing three men and identified the appellant as one of them; that at the time he stopped his car he had learned of the robbery; that other officers came up, including Officer Stewart and Deputy Joe Eastburn; that one of the officers shined a light in the car and the plastic money drawer was on the console between the two bucket seats and three cartons of Salem cigarettes were on the floor board; that he was present when other officers took the plastic cash box and three cartons of Salem cigarettes from the automobile.

Officer Willis testified that he found a knife with blood on it near the spot where Officer Reed stopped the automobile. Deputy Joe Eastburn testified as to finding the victim's wallet, and on cross-examination to the voluntariness of the statements of the defendant, and then on redirect, to a confession.

The defendant offered no evidence after the State rested.

The only error argued by counsel on appeal is that the trial court erred in denying the defendant the right to examine Deputy Joe Eastburn on voir dire. The situation arose when Eastburn, on the stand as a witness for the State, was shown a wallet which he identified and stated that he had found it. (It had been identified as the property of the man robbed.) Then the following occurred:

"Q. Where did you find it?

"A. Along the road side where this man told me it was thrown out.

"Q. Godfrey I. Vincent?

"A. Yes sir.

"Q. When did you talk to him?

"A. This bill fold I found later that day; it was about dark___

"MR. COOPER: I want to take this officer on voir dire examination to see

if he has made a statement—what this man told him and before he goes any further I want to know if he advised this man of his rights before he did that.

"THE COURT: Deny that.

"MR. COOPER: Except."

Obviously the answer to the first quoted question was responsive in the first four words but was not responsive "where this man told me it was thrown out." Probably the better course of action would have been to object to the unresponsive part of the answer and move that it be excluded as was done in Lee v. State, 265 Ala. 623, 93 So.2d 757.

 However, since the answer contained information obtained from the defendant, his counsel had the right to inquire as to the voluntariness of the statement and whether the defendant had been properly warned of his rights. And it has been held reversible error for the trial court to deny defense counsel opportunity to cross-examine the witness on voir dire with reference to circumstances surrounding a purported confession for the purpose of determining whether or not it was voluntarily made. Theile v. State, 44 Ala. App. 375, 209 So.2d 854, and cases there cited.

 Conceding that the court erred, we cannot hold that the error probably injuriously affected any substantial right of the defendant. After the quoted part from the record took place, the wallet and its contents were introduced and the State rested. Counsel for the defendant began his cross-examination asking when he first saw the automobile and then when he first saw and talked with defendant. We quote:

"Q. You say you talked to this defendant?

"A. Right.

"Q. Where was he when you talked to him?

"A. In the cell.

"Q. Was any one in there with him?

"A. No one was in the cell with him.

"Q. Who was with you, if any one, when you talked to this man?

"A. Chief of Police, Floyd Phillips and Officer Stuart of Gulf Shores.

"Q. You all went to this man's cell?

"A. Did what?

"Q. Went to his cell?

"A. Yes sir.

"Q. Now prior to your conversation with this man did you or any one else advise him of his rights to have an Attorney before you questioned him?

"A. Yes sir.

"Q. What did you tell him?

"A. Advised him of his rights under the Miranda case—that he could have an Attorney, and he said: 'Man, I'm more familiar with that than you are'.

"Q. What else did he say?

"A. That he had been advised before.

"Q. Then you asked him these questions?

"A. I then advised him of his rights; I read the Miranda warning to him and told him that he had a right to an Attorney.

"Q. What did he tell you?

"A. He said that he would like to have an Attorney.

"Q. Did you permit him to have an Attorney before you questioned him?

"A. I gave him an opportunity to have an Attorney before I questioned him— At that time we backed off and let him alone.

"Q. What kind of opportunity did you give him to get an Attorney?

"A. When he came to the County jail—

"Q. —You didn't permit him to get a Lawyer before you questioned him?

"A. I didn't question him at the jail at the jail—

"Q. —The Gulf Shores jail—You questioned him at the Gulf Shores jail about 9:30?

"A. My questions were limited to had he been advised of his rights."

Then on redirect, the witness testified that he had talked to the prisoner twice—the first time at the Gulf Shores jail and second at the county jail—and each time he read the "rights" card to the defendant; that he made a statement voluntarily and that "He told us after we had talked to the other boys and he was there at that time also that he might as well go on and get the thing straight, and that he was the one who held the knife, or as he said, a razor blade, to Mr. Cooper's neck and that he took his billfold and that when they left there they went on down the Gulf Beach Highway and just before they were stopped by the Gulf Shores Police he showed us just how he threw the billfold out of the window without getting his fingers out of the window and we asked him why, and he said, of course, he was scared and we questioned him about the money that was in the billfold and he said he didn't look in the billfold and I found the billfold after that conversation with him later that night or late that evening, which was around 8:00 o'clock at night in the vicinity of where he said he threw it out." Another witness stated that he was present when Deputy Eastburn let the defendant read the "Miranda" card and then Eastburn took it and read it aloud and that the defendant said he fully understood everything on the card.

At the coram nobis hearing, the defendant testified that he told Deputy Eastburn that "I understood it" after he read the card.

One of the other participants in the robbery, Perry Denson, called as a witness for the defendant, testified on cross-examination that Deputy Eastburn told them what their rights were and in the presence of the witness, Roger Joe Way, Sheriff Wilkins and Deputy Eastburn, the defendant admitted that he had taken part in the robbery.

■ While the better practice is for the trial court to initially hear evidence on the question of the voluntariness of a confession outside the presence of the jury, Duncan v. State, 278 Ala. 145, 176 So.2d 840 [23] [30], we find no reversible error in the instant case, because here, as in Duncan v. State, supra, there was no request for a hearing outside the presence of the jury and there was no conflict in the evidence on the main trial. Duncan v. State, supra, [22].

At the original trial in the instant case, the defendant rested immediately after the State rested and presented no evidence.

On the hearing for writ of error coram nobis, the questions of the voluntariness of the confession, the effectiveness of counsel, and the sufficiency of the evidence to support the conviction were raised. The defendant testified, as did the others who were in the automobile with him at the time of the robbery. Deputy Eastburn testified again, as did Sheriff Wilkins, the Justice of the Peace before whom they were brought after arrest, the attorney who represented the defendant at the trial, and the circuit clerk.

At the conclusion of the hearing, the court stated: "I deny the petition. I think he had a fair trial and was fairly represented."

We have carefully read the evidence in the record. The main controversy in the coram nobis hearing was whether appellant participated in the robbery. It was

his contention and the testimony of another that both of them were asleep in the car when the robbery took place. Otherwise, the testimony was in line with that given at the trial.

A mere observation of that which is in full view is not a search, and testimony concerning such objects is not inadmissible as an illegal search or seizure. Segers v. State, 283 Ala. 694, 220 So.2d 882; Yeager v. State, 281 Ala. 651, 207 So.2d 125, and cases there cited. This answers any contention as to the inadmissibility of the testimony as to the cash drawer and cartons of cigarettes.

A petitioner in a coram nobis proceeding has the duty to establish his right to relief by clear, full and satisfactory proof. Eagen v. State, 280 Ala. 438, 194 So.2d 842. This he has failed to do.

We find nothing in the record to cause us to reverse the judgment of the trial court.

Affirmed.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.