280 So.2d 200

**Grady KNOX**

**v.**

**STATE.**

**8 Div. 245.**

Court of Criminal Appeals of Alabama.

June 26, 1973.

J. N. Powell, Jr., Decatur, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

ALTON M. BLANTON, Circuit Judge.

The appellant was found guilty of the illegal possession of amphetamine tablets and was sentenced to ten years in the penitentiary.

### I.

The first witness for the State was Dr. Van B. Pruitt, a Toxicologist with the State Department of Toxicology and Criminal Investigation, who testified that in April, 1970, he had occasion to examine the contents of seven containers delivered to him by Clarence Harris, an employee of the Morgan County Sheriff's Department. Dr. Pruitt testified that he took a portion of the contents of each of the seven bottles and the tablets contained therein were identified as containing amphetamines which is a type of drug classified as a stimulant, the primary action of which is on the central nervous system, or brain. The witness testified that there were twenty-five tablets in each of the seven bottles and a total of one hundred and seventy-five tablets in all the containers. He testified further that there appeared on the label of the bottles the word, "Benzedrina," and other writing appearing to be Spanish, and that on top of the bottles there were the letters, "SKF," which were the initials of the pharmaceutical manufacturer, "Smith, Cline [sic] and French." He further stated that these drugs were sometimes used to help truck drivers stay awake and that the pills in question were manufactured by a lawful manufacturing company, but that their distribution was not for any American country and, therefore, would be unlawful in this country.

The next witness for the State was Decatur Detective Jerry Bottom, who had been so employed for five and one-half years. It was Mr. Bottom's testimony that on April 17, 1970, he and an informer went to Bill's Restaurant and Outlaw's Truck Stop located in Morgan County. He and the informer went into this establishment about 7:00 P.M., ordered a cup of coffee, and were waited on by one Susan Dunkin. Bottom testified that the informer told Susan Dunkin that he wanted a bottle of "hearts," gave her $6.00, and she returned to the kitchen at that time. Bottom went on to testify that when Susan Dunkin returned from the kitchen area, she called the informer and motioned for him to come to her and the two of them stood for a while and talked. At all times they were in view of the witness and he saw Susan Dunkin drop something into the left shirt pocket of the informer. The witness and the informer finished their coffee, paid for it, and then left the restaurant. The witness also testified that on reaching the out-

side, the informer immediately took from his pocket a bottle of twenty-five Benzedrina tablets and gave them to him. This bottle was later introduced into evidence as Exhibit 7. The witness testified that he initialed the bottle and surrendered it to Investigator Clarence Harris. He went on to testify that the restaurant and truck stop were one structure; that in the southernmost section of the truck stop was a wash rack and lube rack; and that there were double doors which were open when he arrived. Witness testified that it was possible to walk through the restaurant to the truck stop's wash room. He stated that he first saw appellant in front of the gas pumps on his return to the truck stop.

The next witness for the State was Clarence Harris, an Investigator for the Morgan County Sheriff's Department. He testified that he had worked in law enforcement for over thirty years and that in April, 1970, he took part in an investigation involving some illegal amphetamines in and around Hartselle and he had occasion to go to Outlaw's Truck Stop and Bill's Restaurant. The witness testified that the bottle marked State's Exhibit 7 was given to him on the night of April 17, 1970, by Detective Bottom. He stated that he was familiar with Outlaw's Truck Stop and Bill's Restaurant, having been there several times, and that the wash area was open to the public twenty-four hours a day and had been open in this manner for at least five years. The witness testified that after Detective Bottom came back and told about the informer buying the amphetamines from Susan Dunkin, the witness and several other officers proceeded to the truck stop. On reaching their destination, the witness saw an automobile parked in the wash rack area and observed that the overhead doors in the area were open. The automobile was a 1957 Ford and the witness walked over to it. He testified that the window on the driver's side was down and he saw a few items of clothing in the automobile. He further stated that he saw a plastic container on the dash of the car and the container was similar in shape to the one

Detective Bottom had delivered to him. He said that the glove compartment was open and he could see five bottles therein. The bottles looked basically the same and the tablets looked to be the same color and shape as those received from Detective Bottom. These bottles were the same bottles as Exhibits 1–6 introduced by the State. The witness testified that in his law enforcement work he did not recall ever seeing being dispensed by a druggist a bottle with the particular type and size label he described. He said that there were two persons in the wash rack area when he first arrived but that the appellant was servicing someone's automobile at the gas pumps. After asking the two persons in the wash rack area who owned the automobile, one of them said it belonged to the defendant. He then made this inquiry of the appellant who replied, "It is a customer's car that had been left for a wash job and for the fixing of a spare tire." The witness then asked the owner of the station the identity of the owner of the automobile. He replied that the automobile belonged to the appellant. The appellant then came into the lube rack area where he motioned for the witness and said to the witness, "This is my car and the stuff in it." The witness advised the appellant to make no further statements until he was advised of his constitutional rights. The witness stated that the appellant was advised of his rights, placed under arrest and thereafter he verified the ownership of the automobile by finding a uniform shirt in it with appellant's name on it. Witness testified that the appellant when arrested was wearing the same type uniform shirt which was found in the automobile.

II.

The first claim of error is the contention of the appellant that the evidence was insufficient to convict him. It is very apparent that the State proved in the lower court the following:

1. That a bottle of pills was purchased at the truck stop-restaurant under circum-

stances which would suggest that they were illegal drugs.

2. That the officers observed a large quantity of identical pills in identical bottles inside the appellant's automobile. This automobile was parked in the same structure in which the restaurant was located. In this restaurant the pills were purchased from Susan Dunkin.

3. Appellant denied ownership of the automobile on being asked the identity of the owner.

4. Appellant admitted ownership of the automobile and the "stuff" therein in a voluntary statement to an officer whom he had called aside.[1]

5. A uniform shirt, similar to the one appellant was wearing at the time the bottles were found was also found in the automobile. This shirt bore his name.

■ It appears from the wealth of the evidence in this cause that the lower court was correct in denying appellant's contention that the evidence was not sufficient to support the verdict. The jury must have been convinced by the required degree of proof that the accused had a guilty knowledge of the alleged possession; however, this fact can be established by circumstantial evidence. Kirtland v. State, 27 Ala. App. 376, 172 So. 680. Walker v. State, 19 Ala.App. 20, 95 So. 205.

■ A conviction of possession of unlawful drugs does not necessarily depend upon proof of ownership but conviction is to be sustained if the jury is convinced from the evidence that the defendant, either alone or in conjunction with another, was in constructive possession of the unlawful drugs. Womack v. State, 34 Ala. App. 487, 41 So.2d 429. It is now settled that in a prosecution under this act for possession of prescribed drugs, the burden is on the accused to show that the drugs were lawfully prescribed. Hall v. State, 291 Ala. 397, 281 So.2d 662 (1973).

### III.

■ The second claim of error is the contention of the appellant that the lower court should have granted a mistrial because of certain evidence concerning Susan Dunkin, the party who sold the amphetamines to the informer. Such evidence was necessary to show the reason the officers went to the truck stop restaurant looking for amphetamines, and was equally essential for justification of Investigator Harris's seizure of the drugs in appellant's automobile. It would appear that the objection interposed by appellant's counsel in the lower court was not a motion for mistrial since the objection was simply, "Judge, we are going to object to any Susan Dunkin, any connection with her. This defendant is being charged and Susan

---

1. Appellant did not question the admissibility of this voluntary statement in the lower court, nor does he here. This statement is admissible against appellant. See Parson v. United States, 10 Cir., 387 F.2d 944 and United States v. DeBose, 6 Cir., 410 F.2d 1273. It was not necessary for the officer to give the *Miranda* warnings because there was no interrogation within the *Miranda* rule. The Court summarized its holding in *Miranda* as follows:

"We hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized." 384 U.S. 436, at 478, 86 S.Ct. 1602, at 1630, 16 L.Ed.2d 694.

Later cases have pointed out that the rule applies only when there is interrogation. Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311; Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381. The Alabama Supreme Court in Truex v. State, 282 Ala. 191, 210 So.2d 424, defined "custodial interrogation" as follows:

" * * * [W]e mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." There was no interrogation in this case.

Dunkin is not on trial." Such falls short of a motion for mistrial.

■ After evidence had been admitted regarding the finding of a bottle of whiskey, appellant's counsel moved for a mistrial. The learned trial judge instructed the jury to disregard the proof of any whiskey and cured any prejudice that might have been raised against the appellant. Motions for mistrial are directed to the sound discretion of the trial court. Shadle v. State, 280 Ala. 379, 194 So.2d 538. Franks v. State, 45 Ala.App. 88, 224 So.2d 924. It does not appear that there was any manifest necessity for the discharge of the jury and it did not appear that the ends of justice would otherwise be defeated in continuing the case to conclusion. Tit. 30, § 100, Code of Alabama, 1940, recompiled 1958.

## IV.

The third and final claim of error requiring discussion is appellant's contention that the trial court erred in refusing to exclude certain evidence against him on the ground that it was illegally seized without a valid search warrant.

■ From the outset, a search is a forcible seeking out, a probing in hidden places. Kelley v. State, 39 Ala.App. 572, 105 So.2d 687; Sheridan v. State, 43 Ala. App. 239, 187 So.2d 294; Smith v. State, 41 Ala.App. 528, 138 So.2d 474. "A mere observation of that which is in full view is not a search." *Kelley,* supra. See innumerable authorities cited in 38 Words and Phrases, Search, p. 401. Also see Dickerson v. State, 43 Ala.App. 694, 200 So.2d 487. There was no search in this case. The officer was in a public place where he observed the pills "in plain view."

In the leading case of Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067, we find that "it has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." Also see Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; United States v. Lee, 274 U.S. 559, 47 S. Ct. 746, 71 L.Ed. 1202; Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898; Yeager v. State, 281 Ala. 651, 207 So.2d 125; Rutherford v. State, 48 Ala. App. 289, 264 So.2d 210; Vincent v. State, 284 Ala. 242, 224 So.2d 601.

Another interesting case is Richardson v. United States, 5 Cir., 360 F.2d 366, wherein the evidence showed a lid of a cartrunk had been left up and there were exposed to plain view forty-eight one gallon glass jugs full of whiskey bearing no stamp. There, the Court said, "Moreover, there was nothing unreasonable about observing the whiskey which was plainly visible to the naked eye and thereafter seizing it."

■ Based on the evidence in this case, we feel that there was no illegal search and seizure. The officer was in a place open to the general public twenty-four hours a day, and had been so open for the past five years, and the containers in which amphetamines were found were clearly visible and the evidence was admissible and adequately supported the conviction of the defendant.

We have carefully considered the entire record under Tit. 15, § 389, Code of Alabama, 1940, recompiled 1958, and we conclude that error is not made to appear.

The foregoing opinion was prepared by the Honorable ALTON M. Blanton, Circuit Judge, temporarily on duty on this Court pursuant to subsection (4) of § 38, Tit. 13, Code of Alabama, 1940, recompiled 1958; the Court has adopted his opinion as its own.

The judgment below is hereby

Affirmed.

ALMON, TYSON, HARRIS and De-CARLO, JJ., concur.

CATES, P. J., concurs specially.

CATES, Presiding Judge (concurring).

I concur in all that Judge Blanton has written.

However, I should modify the last sentence of Part II of his opinion by a consideration of the rules of interpretation of criminal statutes discussed by Simpson, J., in Dorgan v. State, 29 Ala.App. 362, 196 So. 160.

From a reading of Fuller v. State, 39 Ala.App. 219, 96 So.2d 829, it is obvious that Code 1940, T. 22, §§ 232–255 was so drafted as to put the burden of coming forth with prescriptions on the defendant. This, however, is not true of all statutory crimes. How the offense is constituted is critical to whether or not the State or prosecution need prove various circumstances. State v. Pascagoula Veneer Co., Miss., 227 So.2d 286(2); 22A C.J.S. Criminal Law § 572.

This indictment was laid under Alabama Drug Abuse Control Act which has since been repealed by § 508(b)(4) of the misnamed[1] Uniform Alabama Controlled Substances Act (No. 1407) approved September 16, 1971.

Under the former Drug Abuse Control Act § 2(c) prohibited the possession of a drug [as defined in § 1(b)(1) and § 1(c)(2)] contrary to § 5(c). Section 3 of the Drug Abuse Control Act sets out the penalties. Thus, I consider that § 5(c), for present purposes, makes the possession of any depressant or stimulant drug illegal "unless" under prescription and in the original container. The clause introduced by "unless" I treat as a proviso rather than an exception.

Hence, the defense had the risk of non persuasion on availing itself of the proviso. Had this been an exception the State would have had to negative the existence of a prescription. Sizemore v. State, 45 Ala.App. 126, 226 So.2d 669.

Thus, in People v. Devinny, 227 N.Y. 397, 125 N.E. 543, we find:

"The general rule is that in dealing with a statutory crime exceptions must be negatived by the prosecution and provisos utilized as a matter of defense. Attempts to apply this general rule and distinguish between exceptions and provisos have resulted in many technicalities and in much subtlety. The two classes of provisions—exceptions and provisos —frequently come closely together,. and the rule of differentiation ought to be so applied as to comply with the requirements of common sense and reasonable pleading.  *   *   *"

Black's Law Dictionary, p. 668, says in part:

"  *   *   *  An exception *exempts*, absolutely, from the operation of  *   *   * an enactment; a proviso, properly speaking, defeats their operation, *conditionally*. An exception takes out of an  *   *   *  enactment something which would otherwise be a part of the subject-matter of it; a proviso avoids them by way of defeasance or excuse.  *   *   *"

See Pabst Brewing Co. v. City of Milwaukee, 148 Wis. 582, 133 N.W. 1112.

Here, I think it is clear that under the now repealed Drug Abuse Act showing that the drugs were prescribed was a proviso, i. e., an excuse available to the defendant.

Incidentally, this leads me to conclude that I should not have concurred in the reversal of Hall v. State, 50 Ala.App. 666, 282 So.2d 104 (1973).

---

1. The misnomer arises from the Act's failure to follow the Uniform Act in many basic aspects.