224 So.2d 924

**Walter Neal FRANKS**

v.

**STATE.**

**5 Div. 713.**

Court of Appeals of Alabama.

Nov. 5, 1968.

Jas. K. Haygood, Jr., Auburn, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant stands convicted in the Circuit Court of Lee County, Alabama, of the offense of second degree burglary. His punishment was fixed by the court at six years in the penitentiary. From said conviction and sentence, this appeal is made.

Curtis Clark testified for the prosecution that he had returned to his place of business, a pharmacy, the night of January 17, 1968, after having closed for the evening; that he noticed the front door "had been busted into" and that a lock was lying on the floor. He stated that he told his son, who was with him at the time, to go next door and call the police; that he later saw a car drive up and Lt. Beasley got out; and that he told Beasley that someone had broken into his store and he had seen them inside.

Clark further stated that he went to the back door of the pharmacy while Beasley watched the front door; that he (Clark) had a pistol; that he saw "a figure" open the back door and come out; that he fired his gun into the air and "hollered 'halt' "; and that the figure stopped. Clark identified appellant as being the figure he stopped. The witness further stated that the door started opening again at which time he took his attention off the first man who then "took off around the building."

Lt. Charles Beasley testified that on the night in question, while he was driving past Clark's Pharmacy, he noticed "some figures" in the shadows, became suspicious

and stopped; and that he found that the figures were Mr. Clark and his son. Beasley stated that Clark went to the back door of the building while he remained at the front; that he heard some shots from the back and heard someone running toward him; and that he ran after the running figure when it refused to stop and caught it in a yard next door to the pharmacy.

Beasley stated further that he had a struggle with the figure, who proved to be a man, and noticed that he had something in his hand. When asked if he knew what it was, Beasley answered, "Sul-Spantab." He identified the figure as being Walter Neal Franks, the appellant.

During the testimony of witness Curtis Clark, the following occurred:

"Q. Did you do anything at that point?

"A. I turned my attention; and as I did, this subject proceeded before I could fire—

"THE COURT: If you know whose the men's names are now, I wish you would call them by names instead of saying this subject. It gets me confused as to which one you are talking about. Do you know what the names are now? What is this man's name over here? (Indicating)

"A. *Walter Neal Franks.*

"THE COURT: Well, let's call him Walter Neal Franks.

"MR. YOUNG: Well, he has already testified that it was Walter Neal Franks.

"THE COURT: I know he has, but we are talking about so many subjects out there.

"MR. HAYGOOD: May it please the Court, this witness has only testified as to figures and subjects.

"THE COURT: Let me see. You said you saw this subject, Franks, come out of the store, is that right?

"A. That's right.

"THE COURT: And you recognized him?

"A. I didn't know who he was at that time. I mean, I saw his profile—

"THE COURT: Is this the same man that you saw coming out of your store?'

"A. That's right.

"THE COURT: That you are looking at now?

"A. Yes, sir." (Emphasis added.)

It is appellant's contention that the court's questions quoted hereinabove were highly prejudicial to the defendant in that the court instructed the witness to give names when he referred to a particular person when, in fact, the witness had not shown any knowledge that he knew the defendant or whether the defendant was in the courtroom; and that the trial judge pointed out the defendant to the witness and demanded that he call the defendant by name.

We observe in the record, however, that Clark testified prior to the above quoted colloquy as follows:

"Q. Is that man here in the courtroom today?

"A. He is.

"Q. Do you know him as Walter Neal Franks?

"A. That's correct."

■ It appears that the questions propounded by the judge to the witness were directed toward eliminating any confusion which might arise concerning the identity of the parties involved. Bricken, P. J., in Register v. State, 19 Ala.App. 11, 94 So. 778, stated:

"It was not only within the power of the court to propound questions to witnesses, but if justice required, or if it appeared necessary, it was the duty of the court so to do, and such action upon the part of the court cannot be construed as an aid to the prosecution or as being

prejudicial to the substantial rights of the defendant. * * * "

█ The court's questions, in the instant case, were not prejudicial but were in fact proper in that they eliminated confusion.

Appellant also contends that the court erroneously admitted into evidence the bottle of "Sol-Spantab" previously testified to by Lt. Beasley.

On reviewing the record, we find that Curtis Clark identified the bottle as having come from his pharmacy. Lt. Beasley testified that appellant had the bottle in his hand during the struggle between himself and appellant and that afterwards he went back and found the bottle on the ground where the struggle occurred.

█ This court quoted 22 C.J.S. Criminal Law § 709, p. 1203, which states in part:

"'As a general rule, articles * * * which are properly identified and which tend to show the commission of the crime or the manner in which it was committed or to elucidate some matter in issue, are admissible in evidence for inspection and observation by the jury.'" Lackey v. State, 41 Ala.App. 46, 123 So.2d 186.

█ The testimony of both Clark and Beasley sufficiently identified the bottle which tended to show the commission of the crime. Therefore, the bottle was properly admitted into evidence.

During the testimony of Lt. Beasley on cross-examination, the following occurred:

"Q. You had no idea of what he had?

"A. No, sir, and I didn't want a knife cutting my stomach and I didn't want a pistol going off in my stomach and I squeezed on that index finger as much as I could and told him to drop what he had in his hand and he dropped what he had in his hand. And at that time, I told him again that I was a police officer, that he was under arrest; and he said, 'You didn't catch me inside the building.' I told him I didn't have to catch him inside the building.

"MR. HAYGOOD: We are asking the witness questions and we don't want him to elaborate.

"THE COURT: Well, what he said is part of the res gestae."

In brief, counsel for appellant argues that Lt. Beasley's testimony as to the incriminating statement made by appellant was highly prejudicial. Although, conceding that the prescribed steps necessary to be taken to remove the prejudicial effect of the statement were not timely taken, counsel submits that under the circumstances there existing, the trial court should have then and there declared a mistrial, *ex mero motu*, grounded on the fact that the statement made by the witness was so highly prejudicial that its prejudicial effect could not be excluded from the minds of the jury. Williams v. State, 36 Ala. App. 26, 58 So.2d 646.

Tit. 30, Sec. 100, Code of Ala., 1940, states in part:

"The courts or presiding judges in all cases of jury trial may discharge the jury without giving a verdict, with the consent of all parties to the trial, or without the consent of the parties when in the opinion of the court or judge there is a manifest necessity for the discharge, or when the ends of justice would otherwise be defeated."

█ In Shadle v. State, 280 Ala. 379, 194 So.2d 538, our Supreme Court stated that:

"[It] is well recognized that the granting of a mistrial is within the sound discretion of the trial court, for he, being present, is in a much better position to determine what effect, if any, some occurrence may have upon the jury's ability to decide the defendant's fate fairly and justly. And we will not interfere with the trial judge unless there had been a clear abuse of discretion."

█ Reviewing the statement made by Lt. Beasley on cross-examination, we are not convinced that the appellant's rights

were prejudiced and are not persuaded that the trial court was in error in not declaring a mistrial. *Shadle,* supra.

After diligently searching the record and finding no error therein, we are of the opinion that the judgment in this cause is due to be and the same is hereby

Affirmed.

CATES, J., concurs in the result.