269 So.2d 920

Leslie W. ATWELL

v.

STATE.

4 Div. 182.

Court of Criminal Appeals of Alabama.

Nov. 21, 1972.

Douglas M. Bates, Dothan, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant, Leslie W. Atwell, stands convicted in the Circuit Court of Houston County, Alabama, of second degree burglary. Appellant was sentenced to a seven-year term in the penitentiary of the State of Alabama. From said conviction and sentence, this appeal is taken.

At arraignment appellant was found indigent and desired a lawyer to defend him. The court appointed Honorable William L. Lee, III, one of the leading lawyers at the Dothan bar to represent him at trial. Mr. Lee was vigorous in his defense of appellant and preserved his rights at every stage of the trial proceedings. After conviction, appellant sought and obtained a free transcript and the trial judge appointed another member of the Dothan bar, Honorable J. D. McKinstry, Jr., to represent him on appeal. This lawyer filed a petition in the Circuit Court of Houston County, seeking to be relieved of this appointment for various reasons set forth in said petition. The trial judge entered an order relieving Mr. McKinstry from such appointment. In order to accord appellant his constitutional right to counsel at the appellate level, the Presiding Judge of this Court appointed Honorable Douglas M. Bates, also of the Dothan bar, to represent him on this appeal and he filed an eight-page brief dealing primarily with the facts developed during trial. Mr. Bates was forthright in stating that after lengthly study and research he was unable to find any errors harmful to appellant that he could, in good faith and conscience, advance in his client's behalf.

During the weekend of March 11–12, 1972, the home of David Jack Hughes, 1208 North Park, Dothan, Alabama, was burglarized and the following items of personal property, according to his testimony, were taken from his home:

"A jewelry box, which had all of my jewelry in it, all of the rings, cufflinks and everything was gone. Vacuum cleaner; color TV; stereo; camera; tape player; radio, FM; portable record player; and all of the records and tapes were gone. And got a pair of black shoes, 8D, and a pair of Jarman shoes, 8D; and got black wing-tip shoes, 8D; two red blazers with a tiger emblem on the pocket; two suits, a blue and a brown. Men's cologne; red knit slacks;

blue double knit slacks; miscellaneous shirts, socks; green sweater; igloo ice chest; red evening gown; silver evening shoes; white fur coat; white evening jacket; pink all-weather coat; blue quilted house coat; blue knit three-piece suit; pink suede boots; brown boots; white skin shoes; purple body shirt; orchid slacks; red sweater; red slacks; white body shirt and a long red dress. And I had a gun that was gone, a .44 magnum rifle; 410 shotgun, 12 gauge shotgun and a 12 gauge double-barrel shotgun; and a holster for a .38 pistol was gone."

He and his family returned from Panama City on Sunday night, March 12, 1972, and discovered the burglary. The screen on the bathroom window beside the front door was torn off and the window and the front and back doors were all partially opened according to Mr. Hughes. He also stated that before leaving for Panama City on Saturday morning, they had locked every door in the house and the house was secure. Mr. and Mrs. Hughes immediately made an inventory of the missing items, which was turned over to a Detective employed by the City of Dothan. The above described property was the inventory made by Mr. and Mrs. Hughes.

On the morning of March 13, 1972, Mr. Hughes was called to Police Headquarters to view the property in the automobile that appellant was driving at the time of his arrest. Mr. Hughes identified the items. Some of the shirts had a laundry mark showing they belonged to D. J. Hughes.

Appellant was arrested at approximately 6:05 A.M. on Sunday, March 12, 1972, following a high-speed automobile chase in the City of Dothan and charged with driving without a license. Subsequently, appellant was charged with second degree burglary after a search of his car yielded clothing and other items missing from the Hughes home. After arresting appellant in the drive way of his son's home, the officers took the keys to the automobile he was driving, locked all doors to the car, and then carried appellant to the station house, carrying the keys with them. The officers put appellant in jail and returned to the locked car and drove it to the Police Headquarters. The "search" of the automobile was actually conducted by appellant's son, daughter, and son-in-law in the presence of two policemen at the Dothan police station. At the trial below, the arresting officer testified that the automobile was in the same condition at the time of the search as it was when appellant was arrested, because he had observed the inside of the car, and the car was locked while it was in the custody of the officers. The arresting officer further stated that all of the items were within plain view except items which were found in the trunk.

With regard to each ruling by the trial court, it is abundantly clear that there exists no error which was adverse or prejudicial to the appellant's cause. However, it is essential to note that during the presentation of the State's case and again at the conclusion of the State's case, the defense moved for a mistrial. Both of these motions were founded on common ground—that a witness (investigating officer) was permitted to verbally intermingle some of the items which came from the trunk of the automobile with those which were found on the inside. But examination of the trial judge's rulings and instructions reveal that he properly instructed the jurors to disregard those items which came from the trunk in reaching a verdict. Thus, it was within the trial court's discretion to overrule the motions by the defense and such ruling is to be overturned only where there was a clear abuse of this discretion. Code of Alabama 1940, Title 30, § 100; Franks v. State, 45 Ala.App. 88, 224 So.2d 924. Of course, the items of evidence which were recovered from the inside of the car were legally seized because they were within plain view of the arresting officers. Vincent v. State, 284 Ala. 242, 224 So.2d 601; Sheridan v.

State, 43 Ala.App. 239, 187 So.2d 294; Youngblood v. State, 47 Ala.App. 571, 258 So.2d 913.

■ This appeal raises a basic question concerning the duty of counsel in a case in forma pauperis. In appellant's brief, his court-appointed attorney stated that "no errors harmful to appellant were found" and he advanced no argument in appellant's behalf. In Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, the Supreme Court laid down certain fundamental guidelines for attorneys handling indigent cases and outlined just what their obligation entailed. In *Anders,* the Court declared:

"The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.* The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all proceedings, to decide whether the case is wholly frivolous.

\*   \*   \*   \*   \*   \*

"This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel." 386 U.S. at 744, 87 S.Ct. at 1400.

■ The Court of Appeals (in discussing compliance with *Anders,* supra) held that "assignments of error", though not required in our criminal appellate practice (Code of Alabama 1940, Title 15, § 389) would suffice as a brief for an indigent appellant. Williams v. State, 44 Ala.App. 618, 217 So.2d 830. More recently, in Hawkins v. State, 49 Ala.Cr.App. 26, 268 So.2d 492 (1972) the Criminal Court of Appeals cited *Williams* with approval.

We have given the record in this case a painstaking and thorough search for errors —any error affecting the substantial rights of this indigent—appellant. Unlike *Sheridan,* supra, where the State "put all of its apples in one basket; failing to separate the various pieces of evidence as to whence they were plucked;" the trial judge did not permit any evidence found in the trunk of the car, for which there was no search warrant. All the items of personal property allowed in evidence were those taken from the front and back seats and floor board of the car, all falling within the "plain-view doctrine" of the law of searches and seizures. The trial judge instructed the jury to completely disregard any and all testimony relating to the contents of the trunk of the car. Our research reveals no error requiring a reversal—in short, no errors at all.

■ Neither another court-appointed lawyer, nor a succession of such lawyers, could be of benefit to appellant or an aid to this court in resurrecting an error where there is no error to be found. It would be vain and foolish to advise appellant that his court-appointed lawyer has been unable to find any errors harmful to his cause, and that this court has also been unable to find any errors affecting his substantial

rights, and to invite him to *pro se* a brief if he so desires.

The case is due to be affirmed and it is so ordered.

Affirmed.

CATES, P. J., and ALMON and De CARLO, JJ., concur.

TYSON, J., concurs in the result.