[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 749 
The appellant was charged in a two count indictment, to which no demurrer was interposed, with credit card theft. Count One charged theft by taking or retaining possession of credit cards taken in violation of § 13-4-32 (a), Code of Alabama 1975, and Count Two charged theft of credit cards lost, mislaid or delivered by mistake in violation of § 13-4-32 (b), Code of Alabama 1975. At the close of the evidence the state dismissed and struck Count Two of the indictment, and the case went to the jury on Count One only. The jury found the appellant "guilty as charged," and the trial court set punishment at ten years imprisonment.
The appellant filed a motion for new trial, which was overruled following a hearing thereon. From the judgment of the court, sentencing the appellant, and the overruling of his motion for new trial, the appellant prosecutes this appeal.
Orland M. Free of 1900 Rice Mine Road in Tuscaloosa testified that on September 5, 1978, at approximately 6:30 p.m. or 7:00 p.m., he discovered his billfold and checkbook missing from his automobile. The billfold contained a driver's license and three credit cards: BankAmericard, Exxon, and Visa, all belonging to Mr. Free. Mr. Free's automobile was parked unattended in a loading zone in front of his place of business, Office Products, Inc. The billfold and checkbook were on the front seat of the automobile under some papers. Mr. Free had seen his credit cards earlier that day when he stopped to get gas. Mr. Free testified that he did not give the appellant or anyone else permission to take or use the credit cards. There were never any unauthorized charges made on the cards.
On September 6, 1978, Investigator Ken Swindle of the Tuscaloosa Police Department arrested the appellant on an unrelated charge. The appellant was advised of his Miranda[1]
rights by Investigator Swindle and he indicated that he understood those rights. On that occasion, Investigator Swindle asked the appellant for some identification. The appellant pulled out from his person a billfold and handed it to Investigator Swindle. Inside the billfold were the driver's license identification of Orland M. Free and the three previously mentioned credit cards. At this point Investigator Swindle took the appellant to police headquarters where he again read the appellant his Miranda rights. After the appellant indicated that he understood his rights, a statement was taken from him by Investigator Swindle. In the statement the appellant admitted taking from an automobile the billfold "with Orland Free's identification and BankAmericard and other items in it."
At the close of the state's case, the appellant's attorney made a motion to exclude the evidence. This motion was overruled by the trial court.
 I
The appellant's first contention of error is that § 13-4-32 (a), Code of Alabama 1975, under which he was tried and convicted, is unconstitutional. This issue was raised at lower court by motion for new trial.[2]
Section 13-4-32 (a), supra, is as follows:
 "(a) Theft by taking or retaining possession of card taken. — A person who takes a credit card or the information therefrom from the person, possession, custody or control of another without the cardholder's consent or who, with knowledge that it has been so taken, receives the *Page 750 
credit card or the information therefrom with intent to use it or to sell it, or to transfer it to a person other than the issuer or the cardholder is guilty of credit card theft and is subject to the penalties set forth in subsection (b) of section 13-4-40. Taking a credit card or the information therefrom without consent includes obtaining it by conduct defined or known as statutory larceny, common-law larceny by trespassory taking, common-law larceny by trick, embezzlement or obtaining property by false pretense, false promise or extortion.
 "A person who has in his possession or under his control a credit card or the information therefrom issued in the name of another person without the cardholder's consent is presumed to have violated this subsection." [Emphasis added].
The appellant specifically contends that the second paragraph of § 13-4-32 (a) is an unconstitutional violation of due process of law. He claims that this section of the Code removed his presumption of innocence at trial and shifted the burden of proof from the state to him under a "statutorily created presumption of guilt based on mere possession."
In the case of State v. Thomas, 144 Ala. 77, 40 So. 271, 272
(1906), we find the following:
 ". . . `The Legislature has the power to give greater effect to evidence than it possesses at common law, and in both civil and criminal proceedings it may declare what shall be prima facie evidence. On the other hand, it cannot prescribe what shall be conclusive evidence, as this would be an invasion of the province of the judiciary.' This seems to be a rule of well nigh, if not of universal recognition. . . .
 . . . `We think it clear that the legislature has the power to prescribe rules of evidence and methods of proof. A law which would in effect exclude the evidence of a party, and thereby deny him the right to be heard, would deprive him of due process of law. A law which provides that certain facts are conclusive proof of guilt would be unconstitutional, as would one which makes an act prima facie evidence of crime, which has no relation to a criminal act, and no tendency whatever to establish a criminal act. If, however, the Legislature in prescribing the rules of evidence in any class of cases, leaves a party a fair opportunity to establish his case of defense, and give in evidence to the court or jury all the facts legitimately bearing on the issues in the cause to be considered and weighed by the tribunal trying the same, such acts of the Legislature are not unconstitutional. It has been repeatedly held that the Legislature has the right to declare what shall be presumptive or prima facie evidence of any fact.' . . ."
Accord: Mobile, J, K.C.R.R. v. Turnipseed, 219 U.S. 35, 42,31 S.Ct. 136, 55 L.Ed. 78 (1910).
It is further stated in the case of Griggs v. State,37 Ala. App. 605, 73 So.2d 382, 386 (1954) that:
 "It is now well established that a legislative body may provide by statute that certain facts may be prima facie or presumptive evidence of other facts, provided reason and experience connect the ultimate fact presumed with the facts proved. Such statutes are within the powers of the legislative body to enact, they are not considered an infringement upon the judiciary, and are not violative of any other constitutional provisions. . . ." [Citations omitted].
As we read the presumption contained in § 13-4-32 (a), it is a legislatively created aid to the prosecution in proving a prima facie case. It does not relieve the prosecution of the burden of proving the defendant's guilt beyond a reasonable doubt and to a moral certainty, nor does it nullify the presumption of innocence that stays with a defendant throughout the trial. In fact the trial court charged the jury on these principles of law. The trial court also charged the jury that the presumption set forth in *Page 751 
§ 13-4-32 (a) was a rebuttable presumption that could be overcome by the evidence.
Before the prosecution is entitled to the presumption that § 13-4-32 (a) has been violated, certain elements must be proven: A person must (1) have in his possession or control, (2) a credit card or the information therefrom, (3) issued in the name of another, and (4) without the cardholder's consent. Once this presumption is shown, it is incumbent upon the defendant to explain his possession consistent with honesty, or rest under the assumption that he had stolen it. "It is consistent with all the constitutional protections of accused men to throw on them the burden of proving facts peculiarly within their knowledge and hidden from discovery by the Government." Caseyv. United States, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632
(1928); Buckles v. State, 291 Ala. 359, 280 So.2d 823 (1973).
The statutory presumption in § 13-4-32 (a) does not operate to preclude a defendant from an opportunity to submit to a jury in his defense all of the facts bearing upon the issue. We believe the presumption to be constitutionally permissible since there is a rational connection between the facts proved: i.e., the appellant's unexplained possession of credit cards of another without the owner's consent; and the presumption based upon proven facts: i.e., a violation of the crime of credit card theft. See: Barnes v. United States, 412 U.S. 837,93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); Leary v. United States,395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); United States v.Gainey, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965);Ingram v. State, Ala.Cr.App., 356 So.2d 761 (1978).
 II
The appellant next contends that a fatal variance exists between the charge contained in the indictment and the proof at trial. As stated earlier the appellant was convicted under Count One of the indictment, Count Two having been dismissed on motion of the district attorney.
The charge of credit card theft contained in Count One of the indictment tracked the language of § 13-4-32 (a), supra. The indictment[3] charged that the appellant took credit cards from another without the cardholder's consent, or, received credit cards of another knowing they were stolen with intent to convert them to his own use. (Emphasis added). Count One charged in the alternative two offenses of the same character and subject to the same punishment. This is permissible under §§ 15-8-50 and 15-8-52, Code of Alabama 1975. The disjunctive conjunction "or" was used to denote that either taking or receiving a credit card was sufficient to bring the transaction within the statute. Proof of either satisfies the offense charged in § 13-4-32 (a). "When criminal conduct is alleged in an indictment in the disjunctive, we must view the proof against each disjunctive allegation separately." Hammond v.State, Ala.Cr.App., 354 So.2d 280, cert. quashed, Ala.,354 So.2d 294, cert. den. 439 U.S. 823, 99 S.Ct. 91, 58 L.Ed.2d 115
(1978).
The state clearly proved that the appellant took credit cards belonging to Mr. Free without Mr. Free's consent. The appellant was found in possession of the cards and he attempted to use them for identification. The state proved more than enough evidence to show that the appellant committed a substantial offense specified in the indictment. Dotson v. State, Ala.Cr.App., 337 So.2d 83 (1976).
We must answer the appellant's erroneous contention that a fatal variance exists because intent to use the credit cards was not proven. We believe intent to be shown by the appellant's attempt to use the contents of the billfold (which includes the credit cards) for identification. Even if this were not so, intent is not a requirement *Page 752 
under the first alternative charged in Count One.
 III
During their deliberations the jury returned to the courtroom several times to ask questions of the trial judge and for further instructions. At one point the jury returned to the courtroom and the following took place:
 "THE COURT: Ladies and gentlemen of the jury, I understand you have been unable to reach a verdict, is that right, you can't all agree?
"THE FOREMAN OF THE JURY: Yes, sir.
 "THE COURT: What I would like to do and I appreciate your patience and cooperation but as I have already indicated it involves quite a bit of expense, time and trouble and so forth to try a case again but of course I am not saying by that I am asking you to disregard your principles but if I may I would like to go down the line and ask each one of you if you feel if you continued your deliberation you might arrive at a verdict so I will start with you. Do you believe you can get together on a verdict?
"A JUROR: I don't think I could change my mind.
 "THE COURT: Well, the question would be do you think you could all eventually agree on some verdict if you continued your deliberation?
"A We couldn't.
 "THE COURT: How about you, ma'am? Do you think you could get together?
"A JUROR: No, I doubt it.
 "THE COURT: How about you, do you think you could get together?
"A JUROR: I would wish so.
"THE COURT: You don't believe you could all agree?
"A JUROR: It doesn't seem we can at the present.
"THE COURT: Do you sir?
 "A JUROR: We voted on it and it is unanimous that we could not.
"THE COURT: How about you, sir.
"A JUROR: I don't believe so.
"THE COURT: I will start over here. Do you?
"A JUROR: No, I don't.
"THE COURT: Do you?
"A JUROR: No, sir.
"THE COURT: Do you think so?
"A JUROR: No, sir.
"THE COURT: How about you?
"A JUROR: No, sir, doesn't seem so.
"THE COURT: How about you, sir?
"A JUROR: No, sir.
 "THE COURT: I will ask you to just remain there for a minute. Let me see the lawyers back here a minute.
 (Here followed a short conference between the Court and Attorneys in the Court's chambers.)
 "THE COURT: I am going to ask you to go back and try a little while. I don't want to punish you but I will ask you to make a further effort so to speak.
(The jury then retired to the jury room.)
 "MR. BURROUGHS: We object to sending the jurors out again after polling the jury and the jury indicating they could not reach a verdict and could not reach a unanimous verdict.
 "THE COURT: I have seen jurors come out and go back and change their mind. They have only been deliberating two hours and I don't think it is good policy to declare a mistrial this soon." (R. pp. 44-46)
The appellant contends the trial court committed a gross abuse of discretion by his polling of the jurors. He claims this "destroys the secrecy of jury deliberations by bringing the disagreement and the voting patterns from behind closed doors into open court."
We do not believe the trial court abused its discretion in polling the jury and sending *Page 753 
them back for further deliberations. The case of Carlton v.State, 395 F.2d 10, cert. den., 393 U.S. 1030, 89 S.Ct. 642,21 L.Ed.2d 574 (1968), holds that it was proper for the trial court to inquire as to how many jurors believed a verdict was reachable. Quoting from Carlton, supra:
 ". . . All the trial judge did was to ask how many jurors thought a verdict could be reached and how many felt that one could not be reached. The answer given in no way revealed how many people in either group stood for or against a conviction, nor did it reveal the numerical standing of the jury except as to whether they thought a verdict could be reached. In addition, there is no indication that any attempt was made to urge an agreement upon the jury or to coerce or influence them in any manner. . . ."
The trial court's inquiry did not reveal any juror's voting preference as to guilt or acquittal. It was directed only to whether the jurors could reach a unanimous decision on some verdict. The secrecy of the jury's deliberations were not impaired.
The trial court is under a duty not to discharge a jury and declare a mistrial if there is any reasonable probability that they can agree. Parham v. State, 47 Ala. App. 76, 250 So.2d 613
(1971). The trial court by being present is in a much better position than an appellate court to determine the jury's ability to decide a defendant's fate fairly and justly. Franksv. State, 45 Ala. App. 88, 224 So.2d 924 (1968). In the case ofHankins v. State, 25 Ala. App. 504, 150 So. 708, cert. den.,227 Ala. 454, 150 So. 709 (1933), the jury had been out all night deliberating; after which they informed the trial court they could not agree on a verdict. This court upheld the trial court's direction to the jury to redeliberate. In this case the jury had only deliberated for approximately two hours. We do not believe the trial court abused his discretion. Jones v.State, 56 Ala. App. 444, 322 So.2d 735, cert. denied, 295 Ala. 408, 322 So.2d 741 (1975).
 IV
The trial court's charge to the jury contained several supplementary instructions. The appellant claims reversible error in the denial of his requested written charge and the overruling of his many objections to the trial court's oral charge.
The appellant's requested charge was substantially and adequately covered by the trial court's oral charge. §12-16-13, Code of Alabama 1975; Cooper v. State, 364 So.2d 382, cert. den., 364 So.2d 388 (1978). Additionally, the trial court sent the appellant's requested written charge in with the jury during their deliberations.
The appellant's objections to the oral charge were made after the jury had retired and out of their presence, therefore, they were too late. Cooper, supra; Witherspoon v. State,356 So.2d 743 (1978). His objection to the trial court's omission to instruct the jury on his interpretation of the law applicable in this case should have been made in the form of a requested written charge. Hall v. State, Ala.Cr.App., 375 So.2d 536, (Ms. August 21, 1979).
For the reasons set out above this case is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 754 
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 755 
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.]
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).
[2] No demurrer was filed in this cause challenging the indictment. To warrant a court to decree a statute void, its invalidity must be distinctly pointed out. Cooper v. Hawkins,234 Ala. 636, 176 So. 329 (1937).
[3] See Appendix A for the indictment. *Page 756