LEIGH M. CLARK, Retired Circuit Judge.
This appeal is from a denial of appellant’s petition for writ of error corum nobis. The appellant had been convicted of murder in the first degree and sentenced to imprisonment for life. On February 3, 1981, the judgment of conviction and sentence were affirmed by this court without the rendition of an opinion.
The petition for writ of error coram no-bis, a pro se petition, was filed on March 6, 1981, and it was set for hearing on April 9. In the meantime, upon a showing of petitioner’s indigency, an attorney was appointed to represent him, which he faithfully did and continues to do so on appeal, in a well prepared brief, in which he presents the following issues:
“I. WHETHER THE COURT AT THE CORAM NOBIS HEARING ERRED TO REVERSAL IN SUSTAINING THE STATE OF ALABAMA’S OBJECTION TO APPELLANT INTRODUCING EVIDENCE REGARDING THE FAILURE OF APPELLANT’S TRIAL COUNSEL TO MOVE FOR A SPEEDY TRIAL, and “II. WHETHER APPELLANT INTRODUCED SUFFICIENT EVIDENCE AT THE CORAM NOBIS HEARING TO PROVE THE CONTENTION THAT APPELLANT HAD INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF APPELLANT’S FEDERAL SIXTH AMENDMENT RIGHTS.”
*2 As to Issue I, appellant urges that he was erroneously denied by the trial court an opportunity to pursue the ground of the petition for writ of error coram nobis to the effect that his trial counsel, to the injury of appellant, had failed to take action to obtain a speedy trial of defendant. There is apparent disagreement as to the basis for the court’s ruling in sustention of the State’s objection, on the hearing of the cor-am nobis petition, to an inquiry by petitioner’s counsel as to whether his counsel on the trial of the case had made efforts to obtain a speedy trial, but the transcript shows that petitioner was permitted “to make a showing for the record” on the point. The transcript fails to reveal any facts or circumstances to the effect that defendant should have been tried any sooner than he was tried. Furthermore, it is stated in appellant’s brief:
“... It was not Appellant’s intention to raise the speedy trial issue in and of itself as a ground for Coram Nobis relief. Appellant was trying to show that the failure of his trial counsel to move for a speedy trial was an indication of his ineffectiveness.”
A review of the entire transcript and the record compels a different conclusion. It was a very difficult, if not impossible, case to defend successfully. According to the undisputed evidence, defendant was tried in about seven months after the homicide of which he was convicted. During a large part of that time, he was under treatment of a psychologist employed by defendant’s counsel, who testified in his behalf on the trial. The petitioner testified on the hearing of the coram nobis petition that “at the time this crime was committed” the petitioner “had suffered alcohol blackout or something.” He further testified that at the time of the homicide his “condition was such” that he was “rendered insane by the alcohol.” We turn now to a consideration of the only other issue raised by appellant.
As to Issue II, we have the benefit of lengthy testimony by petitioner and by his attorney on the trial and on his appeal from a judgment of conviction and sentence. His counsel on this appeal summarizes his contention as to the “combination of factors” that indicate that defendant “had constitutionally ineffective assistance of counsel,” as follows:
“(1) He only saw his trial counsel on three occasions for less than 30 minutes, prior to going to trial;
“(2) That his attorney did not move for a speedy trial despite Appellant’s request for same;
“(3) That his trial counsel did not enter a special plea of not guilty by reason of insanity nor cause the Appellant to be examined to determine his sanity at the time the incident occurred;
“(4) That his trial counsel did not raise the issue of intoxication to the extent that Appellant could not have the requisite intent to commit the crime of Murder;
“(5) And that his counsel withdrew from his case on appeal [Parentheses and enclosed numerals supplied.]”
Although appellant does not contend that any single one of his asserted factors is sufficient of itself to show that defendant did not have effective assistance of counsel, we now examine each of them separately, in the light of the only testimony on the coram nobis hearing, that of petitioner and that of his appointed counsel, Tuscaloosa County Public Defender Ralph Burroughs.
As to appellant’s contention (1), there was testimony by appellant on the coram nobis hearing to the effect that his trial counsel only saw him on three occasions for less than 30 minutes. He testified that it was on “each occasion ... less than 30 minutes.” By the testimony of Mr. Burroughs, we are informed that, although some of the legal work on behalf of appellant, including his representation on the preliminary hearing, was conducted by one or more of Mr. Burroughs’ assistants, Mr. Burroughs was “personally involved in the preparation ... and the trial of the case.” A tape recording was made of the preliminary trial; this was reproduced in type which was studied by Mr. Burroughs. An assistant public defender, who represented *3 defendant on the preliminary hearing had talked with defendant prior to the hearing, and an investigator for the office had previously talked with defendant for “2 hours.” In answer to a question as to how many times Mr. Burroughs talked with the defendant before trial, Mr. Burroughs replied:
“I really can’t say, Mr. Tipton. Several times. I was satisfied that I had the facts from what I could determine and from what my people had determined. I felt that it was a serious enough case that perhaps I should enter into the case and bring in a psychologist whom I hired to try to, as Mr. Bester said, to try to bring back his memory of the action at the scene where the lady was killed.
“Q. All right, sir. That was Dr. Brad Adams?
“A. It was, sir.
“Q. And do your records indicate when and how long Dr. Adams — the periods of time Dr. Adams talked to and tested defendant?
“A. Let me see when he started. He first saw him on March the 8th and he saw him at least one or two times per week up until the trial. He also sat in the trial and was permitted to do that on occasions to try to help — further help make a determination and he also testified in the trial.”
We are convinced by Mr. Burroughs’ testimony, as well as the testimony of the petitioner, that no just complaint can be made by petitioner as to the amount of time spent by Mr. Burroughs in talking with petitioner prior to the trial.
As to (2), relative to the absence of any motion by Mr. Burroughs for a speedy trial, we conclude, as indicated above, that for approximately the first half of the seven months intervening between the indictment and the trial, the professional advisability of any effort by his attorney to obtain a speedy trial would have been contraindicated, that any such effort made thereafter would have been at cross-purpose to the commendable effort by Mr. Burroughs to prepare properly for the trial, largely through the service of the psychologist, Dr. Adams, as an expert witness for the defendant.
As to appellant’s contention (3), by which effective assistance of counsel on his trial is challenged by reason of his failure to enter a plea of not guilty by reason of insanity and his failure to have appellant “examined to determine his sanity at the time the incident occurred,” we find no reasonable basis in the transcript for a plea of not guilty by reason of insanity. The petitioner testified on the coram nobis hearing:
“Q. Mr. Bester, is it not true that your contention is that because of your loss of memory and your failure to recollect the incidences [sic] surrounding the shooting that you were not able to effectively participate in the trial, isn’t that actually the allegation?
“A. Yes, it is.
“Q. It is not that you were insane generally but at the time of the incident that your condition was such that you were rendered insane by the alcohol?
“A. That’s correct.
“Q. That is your contention?
“A. Yes.”
There is nothing in the transcript to indicate that defendant had a history of any mental illness. His attorney wisely concluded that by reason of the circumstances of the homicide and the state of mind of defendant at the time he committed the homicide, he would have had some chance, without a special plea of not guilty by reason of insanity, of a verdict of a lesser included homicide than the homicide expressly charged in the indictment, murder in the first degree. Instead of his being criticized for his handling of the case in this respect, his counsel is to be commended for his apparent soundness of judgment and his obvious devotion of duty to his client. By utilization of the testimony of Dr. Adams, defendant’s counsel fought hard, and with some chance of success, for a verdict more favorable to defendant than the verdict returned by the jury. Under the undisputed evidence on the coram nobis hearing, except some testimony by petitioner as to an alcohol problem, “blackouts, grand mal seizures, *4 things to this effect,” nothing has been presented to indicate that at the time of the commission of the alleged crime defendant was not legally sane, that is, that he was “so affected by disease of the brain ... as to render him so insane that he did not know right from wrong with respect to the particular offense charged, or by reason of such mental disease he could not resist doing the wrong; and the crime must have been the product of such diseased mind.” Streeter v. State, 278 Ala. 272, 177 So.2d 826 (1965); Parsons v. State, 81 Ala. 577, 2 So. 854 (1886). We cannot say with certainty that some expert witness could not have been found who would have supported a plea of insanity, but, if so, we are reasonably certain that the testimony of an expert in favor of defendant on the issue would have been met by testimony of an expert to the contrary. In any event, we believe that a plea of insanity would probably have fallen flat on its face and would not have helped the defendant.
The evidence on behalf of each party on the coram nobis hearing pertinent to appellant’s contention (4) is sparce. However, we are convinced that defendant’s trial counsel did not fail in his duty to render effective assistance to defendant in not raising “the issue of intoxication to the extent that Appellant could not have the requisite intent to commit the crime of Murder,” as contended by appellant. In a difficult first-degree murder case, as the basic ease here unquestionably was, prior to the effective date of Alabama Criminal Code, defendant’s counsel could reasonably expect the court to so charge the jury as to permit a legal finding by the jury that defendant was guilty of murder in the second degree, which would have been an acquittal of the charge of murder in the first degree. Harrison v. State, Ala.Cr.App., 340 So.2d 849, cert. denied, 340 So.2d 854 (1976). It could also be reasonably expected that, unless “it is perfectly clear that there is no evidence tending to bring the alleged homicide within some particular degree,” the trial court would charge on all degrees of homicide, including manslaughter in the first degree and manslaughter in the second degree. Strong v. State, 52 Ala.App. 237, 291 So.2d 325 (1974). It appears that defendant’s trial counsel carefully analyzed the circumstances pertaining to the homicide and exercised his best judgment as to what extent the issue of defendant’s intoxication should have been emphasized. We cannot say that his judgment was faulty. We are convinced that if his judgment had been different, action thereon would not have changed the result in the case. In his testimony on cross-examination on the coram nobis hearing, Mr. Burroughs said:
“... And, as you know, if you proceed on a temporary insanity due to overdrinking of alcohol or something that may have affected his mind, you’ve got to face the charge by the judge to the jury that voluntary drunkenness is no excuse and so forth weighed against the further charge that unless he was so far intoxicated that he was unable to form the intent, one of the essential elements of the crime, and since it was a jury trial and they set the punishment, I didn’t feel that I would pursue that too far. However, we did use Dr. Adams in the case to show that part of it, you know, of the situation.”
As to appellant’s contention (5), which pertains to the withdrawal of Public Defender Burroughs from his representation of Mr. Bester on appeal, the transcript and the record proper are clear as to the details of what occurred. After perfecting the appeal from the judgment of conviction and sentence and obtaining a transcript of the proceedings, at no cost to defendant, Mr. Burroughs could find no basis for reversal. In his testimony on cross-examination on the coram nobis hearing, he said:
“Q. Okay. Now, you did file notice of appeal?
“A. I did.
“Q. When you filed the notice of appeal, you did feel at the time that you had a basis?
“A. Well, you always do at that time.
“Q. All right, sir. Now, at some point—
*5 “A. Well, in fact, it’s your duty, I feel, if your client wants you to file a notice of appeal and get the transcript and then you have got it down in black and white and you can read it and see and pick all the things you want to and just pick at it.
“Q. Okay. Now, but at some point, then, you determined that there was nothing appealable in the trial?
“A. I could find no material issues that I felt.
“Q. At that time, you withdrew?
“A. Mr. Cornwell [Assistant Public Defender] also read the transcript and did some work and we had other people read it.
“Q. And then you then submitted a brief—
“A. Yes.”
His testimony further shows that his brief contained an acknowledgement of his inability to find any error in the action of the trial court that he could in good faith advance in favor of the appellant, set forth a list of the rulings adverse to defendant on the trial, requested the court on appeal to examine the record, requested permission to withdraw as counsel in the case and let other counsel be appointed for appellant, and notified Mr. Bester accordingly. During this time Mr. Bester had been removed from imprisonment in Tuscaloosa County and communication between them was not as expeditious as Mr. Burroughs desired, but he arranged, when he learned that Mr. Bester desired to file a pro se brief, for Mr. Bester to receive a copy of the record proper and a transcript of the proceedings. His action was in full compliance with his duty to Mr. Bester. Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); Atwell v. State, 49 Ala.App. 207, 269 So.2d 920 (1972).
The judgment of the trial court should be affirmed. We are convinced that representation of Mr. Bester by the Tuscaloosa County Public Defender and the representation of Mr. Bester by his present counsel have measured up to all legal requirements and to the high standards of the legal profession.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.