Cornelius Richardson was indicted for capital murder in violation of § 13A-5-31(a)(2), Code of Alabama 1975 (repealed by Acts 1981, No. 81-178, § 20 effective July 1, 1981). The jury found the appellant "guilty of the capital offense as charged in the indictment." He was sentenced to "life in prison without the possibility of parole."
Since the appellant did not raise the issue of the sufficiency of the evidence, the facts of this case will be only briefly stated.
On April 21, 1981 a security guard was shot and killed outside Van's Photo in Mobile, Alabama. Later, on December 13, 1984, this appellant was indicted for this offense. He was tried for this offense on December 9-11, 1985.
The identity of the assailant was the central issue at trial. The bulk of the State's case against the appellant consisted of testimony from several of his acquaintances, three of whom were convicted felons. The one eye-witness to the homicide was unable to identify this appellant as the assailant. *Page 290 
Mrs. Rosemary Leatherwood Chambers testified that she had used drugs with the appellant during 1981 and that, prior to the shooting, she had told him that the Van's Photo security guard carried a lot of money in his wallet.
Ms. Wanda Jackson testified that she also had told the appellant, prior to the shooting, that the security guard at Van's Photo carried a lot of money in his wallet. She also said that sometime following the shooting the appellant told her that he had a gun which a friend of his had used to kill someone and that he needed to get rid of same.
Percy Dennis, a convicted felon, testified that, following the shooting, the appellant told him that he had shot and stabbed a security guard at Van's Photo.
Douglas Parker, Jr. testified that he and the appellant had planned to rob the security guard and that, after the shooting, the appellant told him that he had shot the security guard twice and taken his gun.
Jimmy Lee Clemmons testified that he had given the appellant some drugs "on credit" on the night of the homicide and, when he saw the appellant later, the appellant had two pistols and had asked him if "that man" had died after Clemmons told him that he had been questioned by the police about the shooting.
 I
The only issue raised on appeal by the appellant concerns the trial judge's handling of the jury deliberation process. The appellant contends that the trial judge erred to reversal in polling the deadlocked jury as to their numerical division.
He also asserts as erroneous the judge's actions in determining through a show of hands whether the jury regarded being able to review the testimony of a particular witness as essential to achieving a verdict and allowing the jury to take the transcripts of the testimony of three government witnesses with them into the jury room.
The pertinent portion of the record reveals the following:
"(The jurors began their deliberations at 10:55 a.m. and returned to the courtroom with questions at 11:22 a.m.)
 "JUROR: Do I presume and I understand you to say that if we requested that a replay of a certain individual's testimony while he was under oath during the trial could not be replayed?
 "THE COURT: It's very difficult. The law doesn't like me to do that, or the Supreme Court doesn't like me to do that for the reason that it says that it gives undue emphasis to the weight of a particular witness. However, under certain circumstances I might do that. It's not easy to transcribe the testimony of a witness. I mean, it takes her I forget how many hours doing it out of court for every hour in court of testimony that it takes. But which particular witness were you talking about.
"JUROR: The one known as Big Bobby.
 "THE COURT: Big Bobby. I don't know how long he testified.
"MR. COPELAND: I'm sorry, Judge?
 "THE COURT: I'm trying to figure out how long he was on the witness stand.
 "MR. COPELAND: He wasn't one of the longer witnesses.
 "THE COURT: Is there something in particular in that testimony that you were looking for? I mean, I might be able to find a particular portion of it. We might be able to get the whole thing. I don't know how long it was.
 "JUROR: He had a conversation with the defendant that we were interested in. Each one of them testified to a conversation and it's kind of running together as to which one said what.
 "THE COURT: We might get in — well, let me think about that. Go ahead and try to reach a verdict based on the evidence you have and let me give that some thought.
"(The jurors leave the courtroom and resume their deliberations at 11:31 a.m.)
* * * * * *
"(The jurors return to the courtroom at 12:10 p.m.) *Page 291 
 "Ladies and Gentlemen, you now have the case for your deliberation. I just want to say this to you before you go to lunch. Although you have it for your deliberations you're still not at liberty to discuss it among yourselves or with anyone else until all twelve of you are back in the juryroom. So please don't discuss it over lunch. And when you get back from lunch you may then resume your deliberations.
"(A luncheon recess was had, after which the jurors resumed their deliberations and returned to the courtroom at 4:05 p.m.)
 "THE COURT: Ladies and Gentlemen, do I understand the jury has a question?
"JUROR: I'm sorry?
"THE COURT: Do you have a question?
 "JUROR: Your Honor, we've been unable to reach a unanimous decision for or against the defendant.
 "THE COURT: Is there any particular point of law that I might help you with which might assist you in reaching a verdict?
 "JUROR: I believe the biggest problem that we had was in determining the credibility of the witnesses in order to accept their testimony, Your Honor.
 "THE COURT: All right. I don't want to know which way you're hung, but would you tell me your numerical division of numbers?
"JUROR: We're at seven and five as it stands.
 "THE COURT: Is there any juror who has a question that I might be able to answer which might assist you in arriving at a verdict? (No response.) You don't feel that further deliberation would be helpful to you?
 "JUROR: I think we've reached a decision that, no, sir, it's an individual thing that this person has got to satisfy himself as to the credibility of the evidence presented by some of the witnesses.
 "THE COURT: The question that you asked me for earlier, is the answer to that question important to your decision?
 "JUROR: It could lend to it, Your Honor; yes, sir. This area is one of the areas as to the credibility of that particular person's testimony as to whether we accept it or to not accept it.
 "THE COURT: All right, Are you referring to the facial hair or the other?
 "JUROR: Oh, no, sir, the one about giving the transcript of the testimony.
 "THE COURT: You mean that you believe that if you had the transcript of the testimony of Big Bobby or whatever his name was that you might be able to reach a verdict?
 "JUROR: Yes, sir. As to whether we accept the credibility of his testimony.
 "THE COURT: All right. Let me think about that a moment. Ask that you step back to the juryroom.
"(Jury out)
* * * * * *
"(The jurors return to the courtroom at this point.)
 "THE COURT: Ladies and Gentlemen, the best information that I can get is that it will take us about three hours to transcribe this testimony. If you believe that it's important to your decision then I'm going to do that and I'm going to submit it to you in the morning.
 "How many of you think with that testimony you can arrive at a verdict?
"JUROR: It's a possibility.
 "THE COURT: Let me put it this way. How many of you think you cannot reach a verdict with that testimony?
 "I don't want you to place any undue emphasis on this testimony in the sense that the Supreme Court tells us that if I submit this to you that there is a danger that you might overly emphasize the testimony of the other witnesses. And I want you to think about it, and I want you to think about it tonight and I want you to think about it in terms of whether or not you need any more testimony transcribed and report that fact to me in the morning when you get back.
 "You have the case for your deliberation. You're still not at liberty to discuss it until you return in the morning. Ask that you step back to the juryroom and we'll bring you back down here in the morning and you may resume your deliberations *Page 292 
and hopefully we'll have the testimony by that time.
 "MR. COPELAND: Judge, before you release them may we approach the bench?
"THE COURT: Sure.
"(An off the record discussion was had at the bench.)
 "THE COURT: Thank you very much, Ladies and Gentlemen. Please retire to the juryroom.
"(Jury out.)
* * * * * *
"(End of proceedings on the 11th day of December, 1985.)
"(On the 12th day of December, 1985, Court was called to order and the following proceedings were had with the jury present:)
 "THE COURT: Ladies and gentlemen, yesterday I had a message that you wanted the testimony of two additional witnesses and my Reporter has transcribed their testimony — and they are who? Who are the witnesses?
"REPORTER: Demming, Dennis and Leatherwood.
 "THE COURT: And are those the two additions that you wanted?
 "I just want to caution you once again. I'm going to give you this testimony but I want you to still consider all of the evidence in the case and not give undue weight to this testimony simply because it's been transcribed. I understand there may be a few points you want to consider, so I'm going to deliver it to you right now and you may consider it. You may resume your deliberations.
 "Any other questions? (No response.) Okay. Thank you very much.
 "MR. CLARK: Judge, before you — may we approach the bench?
"THE COURT: Sure.
"(An off the record discussion was had at the bench.)
 "THE COURT: Let me say this to you, Ladies and Gentlemen, the attorneys want to tell you some more about the law before you resume your deliberations and I'm going to do that.
 "The State of Alabama has the burden of proving the guilt of the defendant beyond a reasonable doubt. The defendant has no burden whatsoever. The burden never shifts to him to prove his innocence.
 "Some of the witnesses in the case, there was evidence that they had been convicted of felony crimes. The law says that that evidence is admissible because you may consider that as a factor in determining what weight you will give their testimony and whether or not they are credible.
 "In weighing a witness' testimony you should consider his bias, his prejudice or his motivation for gain in giving such testimony, including any promises of leniency or favorable treatment made by police or prosecutors.
 "I charge you, members of the jury, that you should consider as a factor in weighing the credibility of a witness whether he had previously testified or given statements inconsistent with his trial testimony.
"Okay. You may resume your deliberations.
* * * * * *
"(The transcripts sent to the juryroom were marked as Court's Exhibits.)"
(The jurors returned to the courtroom at 11:21 a.m. with a verdict of guilty.) (R. 431-441).
 A
The appellant insists that we follow the United States Supreme Court's lead in Brasfield v. United States,272 U.S. 448, 47 S.Ct 135, 71 L.Ed. 345 (1926), and hold that the trial court's inquiry into the numerical division of the deliberating jury was, per se, reversible error. This we cannot and need not do.
In Ex Parte Showers, 407 So.2d 169 (Ala. 1981), the Alabama Supreme Court specifically rejected the strict
application of Brasfield in the courts of Alabama. The court held that the rule announced in Brasfield,prohibiting inquiry into the numerical division *Page 293 
of the jury was a rule of procedure and, therefore, was not binding on Alabama courts. The Showers court stated,
 "At least one court has specifically addressed this question. In Sharplin v. State, 330 So.2d 591 (Miss. 1976), there was an inquiry by the trial judge into the numerical division of the jury. The defendant in Sharplin, as in the present case, cited Brasfield for the proposition that the request was per se reversible error. The court stated that, 'We conclude that Brasfield was not grounded in a specific constitutional provision that has subsequently been applied to the states through the Fourteenth Amendment, but was announced as a rule of procedure to be followed in the federal courts.' Sharplin v. State, 380 So.2d 596. We agree."
Showers, supra, at 171. See Ellis v. Reed,596 F.2d 1195 (4th Cir. 1978) (rule in Brasfield "is one of judicial administration based on the supervisory powers of the Supreme Court over the federal court system" and "is not applicable per se to the state courts.")
The Showers court implicitly adopted a "totality of the circumstances" approach in determining the propriety of such an inquiry by the trial judge. We do so explicitly here.
This court stated in Showers,
 "While the trial judge is vested with large discretion in the conduct of the trial and may admonish the jury as to the desirability and importance in agreeing on a verdict, he may also urge jurors to make every effort consistent with their consciences to reach such verdict. He may request jurors to lay aside mere pride of judgment and listen to what the other jurors believe from the evidence. The judge may ask the jurors to reason together in a spirit of fairness and candor and talk over their differences and, if possible, harmonize them. However, it is not proper to give an instruction censuring jurors for not agreeing with the majority. Ashford v. McKee, 183 Ala. 620, 62 So. 879 (1913); Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)."
Showers v. State, 407 So.2d 167, 169 (Ala.Crim.App.), rev'd on other grounds, 407 So.2d 169 (Ala. 1981).
In its opinion the Alabama Supreme court stated,
 "It is quite clear that under Alabama law a trial judge may urge a jury to resume deliberations and cultivate a spirit of harmony so as to reach a verdict, as long as the court does not suggest which way the verdict should be returned and no duress or coercion is used. Phoenix Insurance Co. v. Moog, 81 Ala. 335, 1 So. 108 (1886); Strickland v. State, 348 So.2d 1105
(Ala.Crim.App.), cert. denied, 348 So.2d 1113
(Ala. 1977); Jones v. State, 56 Ala. App. 444, 322 So.2d 735, cert. denied, 295 Ala. 408, 322 So.2d 741 (Ala. 1975)."
Showers, supra, at 171 (emphasis added).
A totality of the circumstances or case-by-case approach thus best serves the underlying purpose here: to protect the jury deliberation process from undue influence or coercion.
When viewed as a whole, the circumstances surrounding the judge's inquiry into the numerical division of the deadlocked jury in this case did not amount to coercion.
In Showers, the lone hold-out on the 11-1 jury was essentially admonished to vote with the majority. The court stated at one point, "And, I simply ask the person who is the one that does not agree with the others to remember, that those 11 others on the jury are fair, and reasonable people, and if they were not so, they wouldn't be on the jury."Showers, supra p. 168.
The conduct in that case would have been error to reversalwithout an inquiry as to numerical division. InGidley v. State, 19 Ala. App. 113, 95 So. 330 (1923), cited by the appellant, an inquiry as to whether or not a verdict could be reached was made. A juror responded, "No, sir, we haven't been able so far. Judge, we stand 11 to 1."Gidley, supra, at 114, 95 So. 330. With this knowledge the judge proceeded to give a modified "Allen charge" which *Page 294 
contained patently coercive language. At one point the judge stated, "The business of the courts cannot be disposed of by mistrials." Gidley, supra at 114, 95 So. 330.
In the case at bar, the court gave no "Allen charge" and did not admonish the jury to reach a verdict. The judge's inquiry in this case was made for the purpose of determining the practicability of allowing the jury, which had requested a review of some of the testimony, more time for deliberation. We find no reversible error here. See also, Orr v. State,269 Ala. 176, 111 So.2d 639 (Ala. 1959) (holding that several coercive statements made in combination required reversal);Ex Parte Morris, 465 So.2d 1180, 1183-84 (Ala. 1985) (judge's "knowledge of the serious misgivings of one juror in acquiescing in the guilty verdict, coupled with the judge's express determination to get a unanimous verdict from these twelve jurors, made his final words of 'encouragement' coercive."), Channell v. State, 477 So.2d 522
(Ala.Crim.App. 1985) (where judge sent deadlocked jury back to deliberate on two occasions but did not indicate to the jury that he "expected" a verdict, admonish the hold-out juror to agree with the majority or inquire about or mention the 11-1 numerical division, reversal was not required).
 B
The appellant also contends that the trial judge's actions in determining, through a show of hands, whether the jury regarded the testimony of Percy Dennis as essential to achieving a verdict constituted grounds for a mistrial. He argues that this type of inquiry is much more coercive than that condemned inGidley, supra. We do not agree.
In Wells v. State, 378 So.2d 747 (Ala.Crim.App.), writ denied, 378 So.2d 756 (Ala. 1979), this court was presented with a similar situation. There, the trial judgeindividually polled the jurors to determine how many believed that a verdict was reachable. Holding the judge's actions to be permissible, we said,
 ". . . All the trial judge did was to ask how many jurors thought a verdict could be reached and how many felt that one could not be reached. The answer given in no way revealed how many people in either group stood for or against a conviction. . . . In addition, there is no indication that any attempt was made to urge an agreement upon the jury or to coerce or influence them in any manner. . . ."
. . . .
 "The trial court is under a duty not to discharge a jury and declare a mistrial if there is any reasonable probability that they can agree. Parham v. State, 47 Ala. App. 76, 250 So.2d 618 (1971). The trial court by being present is in a much better position than an appellate court to determine the jury's ability to decide a defendant's fate fairly and justly. Franks v. State, 45 Ala. App. 88, 224 So.2d 924 (1968)."
Wells, supra at 753.
Although there was no mention of the specific point on which the jury disagreed in Wells, we do not consider this distinction fatal. As we note below, the revelation of the point of disagreement among the jurors and the fact that they were allowed to reconsider previous testimony did not unfairly influence the jury's deliberations.
 C
The appellant contends, specifically, that the trial judge erred in allowing the transcripts of three of the witnesses' testimony to be taken into the jury during deliberations. We disagree.
It is true, as the appellant notes, that § 12-16-14, Code of Alabama 1975 provides that only exhibits which have been admitted into evidence and depositions which have been read to the jury may be taken into the jury room. We disagree, however, with the appellant's contention that the actual, physical transcripts of testimony given in court are not "evidence". Although the documents themselves had not been (and as a practical matter, could not have been) formally introduced during the trial, the fact remains that the testimony *Page 295 itself had. The formal introduction of the transcripts was unnecessary for the purpose of allowing it to go to the jury. See Jolly v. State, 405 So.2d 76 (Ala.Crim.App. 1981).
Furthermore, the fact that the testimony was allowed in the jury room in written form did not jeopardize the jury's consideration of the other evidence presented in the case. The trial judge repeatedly admonished the jury that they should not place undue emphasis on the testimony contained in the transcripts. In addition, the testimony being reviewed by the jury was not that of one particular person. The jury was allowed to review and compare the testimony of three of the witnesses.
We find no abuse of discretion here. See Fitchard v.State, 424 So.2d 674 (Ala.Crim.App. 1982); Hammes v.State, 417 So.2d 594 (Ala.Crim.App. 1982).
For the above-stated reasons, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.